No. 14,155.

Meyer *v.* Milliken et al.
(76 P. [2d] 420)

Decided December 27, 1937.   Rehearing denied February 21, 1938.

Mr. W. E. CLARK, for plaintiff in error.

Messrs. ALTER & UPTON, Mr. C. R. ELLERY, Messrs. FARRAR & MARTIN, Mr. HAROLD H. HEALY, Mr. M. B. HOLT, JR., Mr. Y. A. LAND, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE parties are before this court in the same order as in the trial court and reference will be made to them as plaintiff or Meyer, and defendants, or the latter will be mentioned by name, as Milliken, Transcontinental Oil Company, the Ohio Oil Company and Texas Production Company.

Prior to August 31, 1922, Meyer, now deceased, then a resident of Wyoming, procured an oil and gas pros-

pecting permit from the United States Government on lands in Moffat county, Colorado, known as the "Hamilton Dome" on which is located the "Moffat Pool." On the above date the Transcontinental Oil Company, by written agreement, contracted to pay him one-sixteenth of the net profit production from oil operations on the lands, and bound the successor and assigns of the company thereby. W. B. Milliken, a defendant, witnessed this agreement. Milliken and his son Carl S. asserted a claim to a two-thirds interest in the one-sixteenth interest contracted to Meyer, but on May 3, 1924, after oil had been produced from the lands, Milliken contracted with the company for a one thirty-second of the net production, and in this transaction, he and his son, assigned and transferred to the company all their interest and claims of every kind and nature against Meyer, pertaining to any and all lands in Moffat and other counties in Colorado or the one-sixteenth interest of Meyer in the profits therefrom. In February of 1927, Milliken, in an action filed in the district court of Lincoln county, Wyoming, against the Transcontinental Oil Company upon an alleged claim of a thirty-five per cent interest in lands and production of the Transcontinental Oil Company both in Wyoming and Colorado, sought the cancellation of the contract for the one thirty-second interest theretofore entered into on May 3, 1924, alleging fraud on the part of the company. On application of the company, removal of the case was had to the federal court at Cheyenne, Wyoming, and later was dismissed by Milliken without prejudice. In July of 1927, he filed a like action in the district court of Carbon county, Wyoming, against the company and joined Meyer as a defendant, alleging a "joint adventure agreement" between Milliken, Meyer and the Transcontinental Oil Company, and charged defendant Meyer and defendant company with a conspiracy to defraud him. Therein he prayed an accounting from the defendants, and that the contract

with the defendant company for a one thirty-second interest be cancelled. Upon service of process in Wyoming, the company appeared and answered. Meyer, being served with a copy of summons and complaint in the City and County of Denver, Colorado, March 30, 1928, made no appearance either in person or by attorney. Not until May 15, 1931, was the case tried to the court upon the issue as made between Milliken and the defendant company. July 11, 1931, the court entered its decree in favor of the defendant company, finding that the contract of May 3, 1924, for payment by the company to Milliken of the one thirty-second of the net profits from the production of oil and gas, and the contract of same date, wherein Milliken and his son Carl S. assigned their claims against Meyer, as heretofore mentioned were valid. The decree recited that the contracts were entered into in good faith and kept by the company; that there was no fraud or conspiracy on its part; and that Milliken had accepted, benefited by, and ratified the *contracts*. The prayer for cancellation of the contract for the one thirty-second interest was denied, the cause dismissed as to the defendant company, "with prejudice" and judgment given the company against Milliken for costs.

What then follows, in the same decree, is the origin of the controversy in the case now before us. After first entering the default of Meyer, who had been served with process in Colorado, the court made a finding against him in favor of Milliken, in the face of its finding that Milliken, by his contracts—found to be valid—had assigned, for a paid and received consideration, his every claim against Meyer including the one-sixteenth interest in the net profits from the Transcontinental Oil Company. The court found that Milliken was entitled to one-fourth of the one-sixteenth interest of production that was to be paid to Meyer by the Transcontinental Oil Company under its agreement of August, 1922, and the

value of the one-fourth thus decreed was found to be $30,392.88 to the date of the decree, for that amount judgment was entered against Meyer, and the company was enjoined from paying Meyer, and Meyer from receiving, more than three sixty-fourths of the net profits of the production of the oil. It is pertinent to note here, that there is no *judgment* decreeing the one sixty-fourth interest to Milliken or any other person. Long before Milliken commenced the action in Wyoming, and in June, 1923, the Transcontinental Company had disposed of a one-half interest in the lands in Colorado, the profits from which are here involved, to the Texas Production Company, a defendant in error here, which latter was to drill and develop the lands and assume the obligations of the Transcontinental Oil Company with Meyer. In April, 1931, the Ohio Oil Company, a defendant in error, acquired the remaining interest of the Transcontinental Oil Company in the lands and the production, also agreeing to perform the terms of the Meyer agreement with the Transcontinental Oil Company. The Ohio Company through its attorney, participated in Milliken's Wyoming suit against the Transcontinental Company and Meyer, and after the decree hereinbefore mentioned, it withheld one sixty-fourth of the payments due Meyer under the contract and so continued to withhold same from him until his death, and since, from plaintiff in error individually and as his administratrix. However, March 16, 1935, upon demand of Margaret Milliken, wife of Milliken and assignee of his judgment against Meyer, it paid her $4,355.49, from the monies withheld from Meyer, and made later payments, amounting in all to $4,829.49, and in so doing acted in behalf of the Texas Production Company as well as for itself. After July 11, 1931, the date of the Wyoming decree, and beginning December 30, 1931, Meyer wrote the following letters to the accountant of the Ohio Oil Company; its reply follows each letter:

"Denver, Colorado
December 30-1931.
"Mr. H. H. Wonder,
The Ohio Oil Company,
Findlay, Ohio.
"Dear Sir:
"Have not yet received statement of the Moffat Pool Colorado operation for the quarter ending September 30-1931.
"Will you kindly forward statement and oblige,
"Very truly yours,
"R. D. Meyer."

"The Ohio Oil Co.
"Casper, Wyoming,
January 12, 1932.
"Mr. R. D. Meyer,
1114 Logan St.,
Denver, Colorado.
"Dear Sir:
"Your letter of December 30, 1931, addressed to Mr. H. H. Wonder at Findlay, Ohio, has been referred to me for answer.
"Due to certain complications which have arisen by reason of our difficulties in the surrender of certain lands in connection with our Colorado lease Denver 033221-B, which are lands located in the Moffat Pool, Colorado, there will be some delay in sending you your statement.
"Yours truly,
"R. C. Gwilliam,
Attorney."

"Denver, Colorado
May 26, 1932.
"Mr. H. H. Wonder,
Ohio Oil Company,
Findlay, Ohio.
"Dear Sir:
"I have just received statement and check in the amount of $1,077.42 covering a 3/64ths payment of net

profits from the Moffat Pool Colorado operation for the quarter ending March 31-1932.

"The statement however does not show that a 1/64th is being withheld by you. In order that my records may be complete for the quarter will you kindly write me a letter stating the exact amount in dollars and cents of the 1/64th withheld.

"Thanking you,

"Yours very truly,

"R. D. Meyer."

"The Ohio Oil Co.

"Findlay, Ohio
June 1, 1932.

"Mr. R. D. Meyer,
1114 Logan Street,
Denver, Colorado.

"Dear Sir:

"In reply to the request contained in your letter of May 26, 1932, wish to advise that we are withholding 1/64th of the net profits from the Moffat Pool, Colorado, operatings for the quarter ending March 31, 1932, which amounts to $359.14.

"Yours very truly,

H. H. Wonder."

"1114 Logan Street,
Denver, Colorado
February 18-1933.

"Mr. H. H. Wonder,
The Ohio Oil Company
Findlay, Ohio.

"Dear Sir:

"I am just in receipt of statement and check for $1164.17 in connection with the Moffat Pool Colorado operations for the quarter ending December 31-1932.

"In the preparation of this statement, I observe however that no provision has been made for my interest

as being a 1/16th from which you are withholding a 1/64th.

"Will you kindly therefore write me a letter covering this feature, advising exact amount of the 1/64th withheld for the quarter and the grand total now withheld for all quarters as of date December 31-1932.

"Thanking you,
"Yours very truly,
R. D. Meyer."

"The Ohio Oil Co.
"Findlay, Ohio
February 21, 1933.

"Mr. R. D. Meyer,
1114 Logan Street
Denver, Colorado.
"Dear Sir:

"We acknowledge receipt of your letter of February 18, 1933, in which you ask us to advise the amount of the 1/64th interest we are withholding.

"We withheld $388.05 covering this 1/64th interest for the quarter ending December 31, 1932. The total amount withheld as of December 31, 1932 is $2336.90.
"Yours truly,
H. H. Wonder."

"Denver, Colorado,
May 20, 1935.

"Mr. H. H. Wonder,
The Ohio Oil Co.,
Findlay, Ohio.
"Dear Sir:

"I am herewith returning you statement rendered in connection with the Moffat Pool Colorado operations for the quarter ending March 1935.

"Please enter thereon my 1/64th interest in full showing exact amount placed in the Hold a/c for the quarter, all in accordance with the form of statements rendered

in the past. Also please advise the balance of the Hold a/c as of December 31, 1934.

"Thanking you,

"Yours very truly,

R. D. Meyer."

"The Ohio Oil Co.

"A. M. Gee
General Counsel
Hal W. Stewart
G. E. McCullough
R. H. Fletcher
    Attorneys.

"Findlay, Ohio
May 24, 1935.

"Mr. R. D. Meyer
1114 Logan Street
Denver, Colorado.

"Dear Sir:

"I have before me your letter of May 20, 1935, returning the statement for the first quarter of 1935 concerning operations on lease Denver 033221-a (our 383-a) in the Moffat Pool in Colorado. The situation is being reviewed for the purpose of determining whether or not 1/64th net profits interest should be continued to be held or should be paid to Margaret Milliken as assignee of W. B. Milliken. In order that we may be in better position to determine this matter will you kindly furnish me documentary evidence upon which you base your claim to this 1/64th interest.

"If, upon conclusion of the matter, it appears that the statements to you should properly show the amount involved in this 1/64th, I am returning herewith the statement for the first quarter of 1935 and if any additions are to be made to such statement because of such 1/64th interest, such additions will be made by a supplementary statement.

"Very truly yours,

"Hal. W. Stewart."

It is disclosed by this correspondence that Meyer was endeavoring to be kept advised concerning the one sixty-fourth interest withheld from him and could be led to believe that proceeds from said interest were being held by the Ohio company. The letter from the Ohio company under date of May 24, 1935, indicates that the company was uncertain as to whether it should hold the proceeds or pay same, on demand, to Margaret Milliken, when in fact, the exhibits in the record show that before that time and on March 16, 1935, it made its first payment to her of over $4,000. Meyer died August 17, 1935, and the above information came to his wife, plaintiff in error, in the latter part of September, 1935, whereupon she immediately instituted in the district court of the City and County of Denver the action, the judgment in which, is now before us for review.

Plaintiff, alleging that she had no plain, speedy or adequate remedy at law, on October 29, 1935, filed her complaint, the allegations of which, briefly summarized, are as follows: The death of Meyer, admission of his will to probate and the authorization of the county court to institute this action; the allegation of the agreement of August 31, 1922, between Meyer and the Transcontinental Oil Company for a one-sixteenth of the net profits from oil production upon the lands for which Meyer agreed to procure prospecting permits to be assigned to the company, and the extension of the rights of both parties to their heirs and assigns; that the defendants Texas Production Company and the Ohio Oil Company are corporations doing business in Colorado; that Transcontinental Oil Company, about May 19, 1923, sold and assigned to the Texas Production Company an undivided one-half interest in and to the lands described in the contract between Meyer and the company subject to the conditions of the August, 1922, agreement with Meyer, and requiring the Texas Production Company to develop the lands; that the Ohio company later acquired the remaining interest of the Transcontinental Oil Com-

pany in and to the lands covered by its agreement of August 31, 1922, with Meyer; that the Texas company thereafter reported production to the Ohio company and the two companies then being joint owners and in control of the lands made reports of the monies Meyer was entitled to receive, all reports showing the retention, since April 1, 1931, of one-fourth of the money to which Meyer was entitled under the contract; the institution of the suit by Milliken in the Wyoming court against the Transcontinental Oil Company and Meyer, alleging fraud and conspiracy on the part of the defendants; allegations to the effect that Meyer was not a resident of Wyoming on March 26, 1928, the date on which process from the Milliken suit in Wyoming was served upon him in the City and County of Denver; that he was not a resident of Wyoming at any time thereafter nor at any time prior to March 26, 1928 and subsequent to the month of June, 1920, and that at no time after June, 1920, did he live in the state of Wyoming; that he did not remain out of the state or conceal himself to avoid process upon him, but that in June, 1920, he moved with his family from Wyoming with the intention of becoming, and did become, a resident of Colorado and, until his death, resided with his family at 1114 Logan street, Denver, Colorado; that in March, 1928, Milliken, as plaintiff in the Wyoming suit, caused alias summons to be issued from the district court of Carbon county, Wyoming, which was served upon Meyer in the City and County of Denver; that one of Milliken's attorneys filed in the case an "affidavit for constructive service" alleging Meyer to be a resident of Wyoming, living part time in Denver, and since the filing of the action that he had remained out of the state of Wyoming, concealing himself to avoid service of the summons, and further stating in the affidavit the nature of the action, wherein it was sought to cancel a certain contract entered into between Milliken and the Transcontinental Oil Company which Milliken was induced to make through fraud of the defendants

Transcontinental Oil Company and Meyer; setting out
the applicable Wyoming statutes relative to constructive
service and personal service out of the state; allegation
of service of the summons with a copy of the complaint
on Meyer in Denver, Colorado; alleging that Meyer at
no time entered appearance in the Wyoming court; set-
ting out the answer of the appearing defendant, Trans-
continental Oil Company, which put in issue all matters
in Milliken's petition, including the allegations of con-
spiracy and fraud on the part of both defendants; set-
ting out the agreement of May 3, 1924, between Milliken
and his son Carl S., and the Transcontinental Oil Com-
pany whereby Milliken obtained a one thirty-second in-
terest in and to the net profit production from the lands
involved, and sold and assigned all claims of every
nature they had against Meyer or in and to any interest
in lands he had which are here involved; setting out the
decree of the Wyoming court, hereinbefore summarized
in this opinion; setting out some of the correspondence
between Meyer and the Ohio Oil Company; that the
judgment of the Wyoming court against Meyer is void
because rendered by the court without jurisdiction of
the person of Meyer and without jurisdiction of his prop-
erty which it assumed to impound and because it contra-
venes its own findings as set forth in the decree; that
due process of law was not obtained in the action, con-
trary to the Constitution of Wyoming; that the pleaded
statutes of Wyoming do not purport to, and did not, give
the court jurisdiction to render the personal judgment
against Meyer and that the statutes which authorized
constructive service did not give the court jurisdiction
over Meyer or his property which is assumed by the in-
junctive provisions of the decree.

The prayer of the complaint is that the court hold the
Wyoming judgment and decree to be a nullity and en-
tirely void for want of jurisdiction, and as counsel now
says, inadvertently prayed that the decree of the Wyom-
ing court be vacated; further, that plaintiff have judg-

ment against Milliken and his wife, Margaret M. Milliken, and each of them for the sums paid to them which should have been paid to Meyer under his contract, aggregating $4,829.49, and that the Millikens and all persons claiming under them, be enjoined from attempting to enforce the Wyoming judgment and decree, and from in any way interfering with the rights of plaintiff as to any and all accrued or future accruing monies represented by the one-sixteenth interest of Meyer in the net profits' interest in the production from the lands that have been hereinbefore mentioned.

To this complaint, the defendants Texas Production Company and the Ohio Oil Company filed separate answers and cross-complaints, and defendants Milliken and wife, filed an amended answer, to all of which plaintiff replied. The Texas Production Company, after certain admissions and denials, set up as a defense that the contract between its predecessor in title, the Transcontinental Oil Company and Meyer, vested in Meyer no interest in the lands, leases thereon, or oil produced therefrom, and that in purchasing an interest in the property the answering defendant did not assume, agree to pay, or agree to otherwise discharge the personal obligation between its predecessor in title and Meyer, but acquired such interest subject to the right of Meyer and his successors to participate in the net profits, if any, from said property, and that no contractual relation now or ever existed between defendant and Meyer; that it proceeded upon the assumption that Meyer was legally entitled to look only to the Transcontinental Oil Company and its successor in interest, the Ohio Oil Company; that Meyer with full knowledge had acquiesced in any accounting defendant had made in the matter to the Transcontinental company; that if Meyer had objected to the failure of defendant to make payments to him, it would not have paid either the Transcontinental company or the Ohio Oil Company for the interest claimed by Meyer; that Meyer's action constituted a representa-

tion of facts upon his part; that this defendant could and did rely thereon in making the payments otherwise, thereby changing its position to its prejudice if plaintiff is now allowed to recover; that plaintiff is estopped to make claim and demand against defendant. Further answering as a defense and cross-complaint, it alleges that the payments made by it to the Ohio company were upon the representation that the Ohio company would pay the same to the parties rightfully and legally entitled thereto, and if such payments were erroneously and improperly made, they were made under a mutual mistake of fact and law; that defendant has demanded of Milliken that the amounts be repaid to it which demand has been refused, and it prays that plaintiff's complaint be dismissed as to it, but in the event plaintiff recover judgment against it, then and in that event, it have judgment over and against the Ohio Oil Company and the Millikens for a like sum.

For answer and cross-complaint, the Ohio Oil Company admits that after it acquired the remaining interest of the Transcontinental Oil Company under the agreement between it and Meyer, that the Texas Production Company and the Ohio Oil Company, became sole owners, but denies that they became joint owners as alleged in plaintiff's complaint and denies that any payments made by it to Meyer after January, 1932, were made "for and on behalf of both of said defendant companies"; admits reporting and remitting to Meyer three sixty-fourths of the net profits from production until March 16, 1935 for the full period after it acquired the remaining interest of the Transcontinental company; that it retained in a special account one sixty-fourth of the net profits from production; that on March 16, 1935, relying upon the decree of the district court of Carbon county, Wyoming, and upon the demand of the Millikens, it paid Margaret Milliken $4,335.49 and additional quarterly payments to a total of $4,829.49; that in making said payments, it relied upon the fact that Meyer had

never made any demand or request for payment to him of any sum represented by the one sixty-fourth interest at any time after the date of the entry of the Wyoming decree, that is July 11, 1931; that during all this period it was accounting to Meyer for three sixty-fourths of the net profits and withholding a one sixty-fourth without objection upon the part of Meyer; that the circumstances required Meyer to speak and inform it of his claim to the one sixty-fourth interest, and in not doing so, he acquiesced in the course of dealing; that had Meyer objected, it would not have paid the money to Margaret M. Milliken upon her request and that the payments were made to her in reliance upon the apparent acceptance by, and acquiescence of, Meyer in the Wyoming decree; that in making the payments this defendant changed its position to its prejudice, and that Meyer in his lifetime was, and plaintiff now is, estopped to make or base any claim thereon against it; that by the actions of Meyer, he was guilty of laches and waived any rights to make claim against defendant on account of the payment to Milliken. In cross-complaint against the Millikens, it prays for judgment against them in the amount paid over to them if the money was wrongfully paid under a mistake of fact.

Plaintiff filed her reply to each of these answers. The pleadings are voluminous, occupying some 541 folios of the record and contain many specific allegations by the way of admissions, denials and defenses which are not herein set out for the reason that they would unduly lengthen this statement, it being deemed sufficient to briefly state the allegations pertinent to a determination of the case.

The issues so made were submitted to the trial court upon the pleadings, evidence, and arguments and statements of counsel. In substance the court found that the Wyoming statutes relative to constructive service are constitutional; that Meyer was legally domiciled in Wyoming at the time of the commencement of the action,

at the date of the filing of the affidavit, and at the date of the decree and judgment of the Wyoming court; that the Wyoming court had jurisdiction over the person of Meyer to enter the decree and judgment; that if there is a conflict between the findings and the judgment of the Wyoming court, that matter could and should have been corrected on appeal and such conflict does not render the judgment void on its face; that the judgment is a valid and subsisting judgment and has not been herein successfully impeached; that this action is a collateral attack on the Wyoming judgment and that the issues joined are decided in favor of the defendants and each of them, and against the plaintiff; that there is no equity in the bill and that it should be and is dismissed.

Plaintiff assigns error and contends that the judgment of the court is erroneous for the following general reasons: That in the Wyoming suit, Meyer was admittedly served with summons in the state of Colorado; that the plaintiff in the Wyoming action had no cause of action against Meyer and it was so determined by the decree in that case; that the alleged cause of action in the Wyoming court was void and nonexistent and was a fraud upon both the court and Meyer; that the finding of the Wyoming court in favor of the Transcontinental Oil Company, a joint defendant with Meyer, and charged with him as a joint tort feasor and the dismissal of the action as to the defendant, Transcontinental Oil Company, operated as a dismissal of the action against Meyer as well; that Meyer was not required to seek relief in Wyoming by a review of the judgment rendered against him; that the Wyoming court had no jurisdiction of Meyer or his Colorado property which it assumed to impound, and which was by no remedial process brought or attempted to be brought within the jurisdiction of the court or under its control; that Meyer was and had been for seven years prior to the institution of the action a resident of Denver, Colorado; that the Wyoming judgment is void on its face for want of jurisdiction of Meyer

or his property and no cause of action existed upon which to base the judgment against him; that the attack on the judgment is direct and that the same rule of law does not prevail in an attack upon a foreign judgment as is applicable in connection with attacks upon a domestic judgment; that the Wyoming judgment is, under the facts, a denial of due process of law; that the decree contravenes the findings of the court and violates the mandatory provisions of section 5785 of the Wyoming Compiled Statutes of 1920; and that the findings of a court are not a judgment.

Defendants in error contend that the finding of the trial court herein to the effect that Meyer was, during all the time incident to the procedure of the Wyoming case, a resident of the state of Wyoming, is a finding of fact upon conflicting evidence and is binding upon this court; that the attack upon the Wyoming judgment is collateral; that the allegations of the complaint and the evidence are insufficient to support the attack; that the Wyoming statutes authorize the judgment of the Wyoming court and that the pleas of estoppel and laches present valid defenses.

So many interesting questions are rarely presented as are disclosed by the record in this case, and we here have an outstanding example of an attempt by each party to rely upon the weakness of the other's cause of action or defense, instead of the strength of his or its position. The authorities tend to support, and we find merit in, both the cause of action and the defenses thereto. Equity therefore requires that the substance of this controversy controls rather than exactness of form. With this in view, we need not concern ourselves with the question of whether or not the Wyoming court had jurisdiction of the parties and subject matter in the case before it, which we do not decide. We content ourselves with a discussion of the effect of the judgment there entered. Concerning the one sixty-fourth interest in the profits of production from the lands involved, it is not disputed

that Meyer acquired such interest through and under the contract of August 31, 1922, between himself and the Transcontinental Oil Company. The only person or persons shown to have ever claimed any part of this interest were Milliken and his son Carl S. It is in no way controverted that on May 3, 1924, the Millikens for a valid consideration, then received and retained by them, sold and assigned, not only this particular interest, but any and all claims of every nature they had against Meyer in connection with all lands here involved or the proceeds from the operations thereon, to the Transcontinental Oil Company. This contract of sale, and the assignment thereunder, was found by the Wyoming court under its decree to be valid. The only suggestion of any basis for an action by Milliken against Meyer, rested upon the claim before its assignment. A study of the Wyoming decree and judgment discloses a full and complete adjudication of Milliken's claim by its finding that he had validly assigned it. This finding deprived the court—and incidentaly Milliken—of any basis upon which it could predicate the judgment it later, and by the same decree, entered against Meyer. A judgment must have basis for its existence as a valid judgment. In this connection, it is significant to note that in the Wyoming decree and judgment, there is no judgment against Meyer or in favor of any of the defendants in the action now before us or in any other action shown by the record, for the one sixty-fourth of the net production from the lands involved. It is not disputed that this interest was the property of Meyer in his lifetime and descended to plaintiff in error. It was never transferred by him, or anyone for him, or alienated from him in any way, or taken from him by the decree or judgment of any court. When the Wyoming court entered a personal judgment against Meyer in favor of Milliken, whom it found had transferred and assigned his every claim against Meyer, it recorded an irreconcilable con-

tradiction of the terms of the finding and decree, and these are so inconsistent as to result in a mere nullity, and particularly the judgment rendered in favor of Milliken and against Meyer. There is no precedent based upon sound legal or equitable principles which will warrant an approval by us of a judgment based upon an alleged cause of action which by judicial ascertainment it is established had been sold and assigned by the plaintiff to another for a valid consideration. Such is the glaring result appearing in the Wyoming judgment upon its face. Our conclusions are not the result of a technical construction of the decree when read and considered as a whole. The decree in no way otherwise gave any intimation that Milliken was entitled to the benefits derived from the thing he had sold. It made no disposition of the one sixty-fourth interest which stands now, as it always stood, for the use and benefit of Meyer and his successors. Of necessity this was as apparent to the Ohio Oil Company as it is to us, because its counsel participated in the Wyoming trial, was familiar with the decree and judgment therein entered, and was at all times conversant with the effect of such decree. It cannot now deny its construction of the decree in face of its answer filed herein; notwithstanding, without any right or authority it paid the money here in question to Margaret Milliken out of the one sixty-fourth interest shown to have been still remaining in Meyer. In its answer herein, the Ohio Oil Company alleged the contract between Milliken and the Transcontinental Oil Company whereby Milliken and his son jointly and severally sold to that company all and singular the rights, interests, claims and demands of every kind or nature which they had against R. D. Meyer in anywise pertaining to any and all lands in Colorado, or the one-sixteenth interest of Meyer therein, and that one-sixteenth interest included the one sixty-fourth interest now in dispute. It further alleged that the Millikens were estopped thereby to make any claims against it as

to the said one sixty-fourth interest; that they were not entitled to any part thereof; that the payments made by it to Margaret Milliken covering the one sixty-fourth interest were made, through a mistake of fact, to the wrong person without any consideration from Margaret Milliken and because of "forgetfulness" of said agreement of May 3, 1924, when nothing was due or owing Margaret Milliken or William Milliken under any contract; that in equity and good conscience this money should be repaid to it by the Millikens. The Millikens filed no answer to this cross-complaint, and we have no intimation of their position with reference thereto, other than the opening statement of their counsel at the time of trial to the effect that so far as the cross-complaints of the Ohio Oil Company and the Texas Production Company are concerned, counsel was willing to stipulate that one or the other of the oil companies is entitled to a judgment against the Millikens in the event the court should enter judgment in favor of the plaintiff against either of the oil companies. In this equitable action, it is not a matter of the courts of this state being concerned about the full faith and credit of the constitutional provisions relative to judgments of a sister state, the important question being as to the effect of the judgment of a sister state—palpably void on its face—upon the rights of citizens of this state who are parties to the equitable cause of action in this state. A court of this state unquestionably has the power to enjoin the enforcement of such a foreign judgment between the citizens of this state who are before the court and in the state.

The plaintiff herein was, and is, entitled to maintain this equitable action, it appearing that her property rights have been invaded by reason of her being deprived of money due or to become due her by virtue of a judgment which, in so far as it purports to be effective against her, is void on its face because pronounced by a court which had deprived itself of jurisdiction to enter the particular judgment against Meyer. Judg-

ments must conform to the findings of the court in such a substantial particular. *Bartlett v. Hammond,* 76 Colo. 171, 230 Pac. 109. Applying this rule, the judgment of the Wyoming court, in order to comply with the finding of the court by the same decree, would have been one of dismissal of the cause of action against Meyer, because the court already had found that any claim Milliken had ever had or made against Meyer, had been by him sold and assigned to the Transcontinental Oil Company, leaving him without a cause of action against Meyer.

The plea of laches presented by the defendant oil companies here, is without merit. They contend that Meyer by his conduct led them to believe that he was satisfied with the Wyoming decree. Quite to the contrary is the condition disclosed by the documentary evidence hereinbefore set out in this opinion. The exhibits, letters from the Ohio Oil Company, are a substantial basis for Meyer to have been led to believe that the money represented by the one sixty-fourth interest here involved was being withheld and retained by the company, and its last letter written shortly before the death of Meyer and just prior to the institution of this action, of date May 24, 1935, speaks of withholding the money and questions whether or not the company should continue to withhold it or pay it to the defendant Margaret Milliken. Meyer's letters indicate that throughout the period he made inquiry as to the status of the fund retained and the amount being withheld. They negative any suggestion or contention that his silence over that period of time ripened into laches. During this interim, innocent third parties did not become involved, neither did circumstances require the Ohio Oil Company to change its position to its prejudice except as it did do at its peril.

The reliance of the defendant oil companies upon the plea of estoppel is without justification because there is no evidence to support the plea. It is based largely

upon the allegation that the oil companies relied upon the decree of the Wyoming court and the fact that Meyer made no demand upon them for payment to him. They do not allege that they would have paid Meyer had such a demand been made, and had they relied upon the Wyoming decree, it gave them no authority to pay the money to the Millikens upon their demand, and in making such payments they acted at their peril.

The trial court in this case erroneously based its judgment upon the Wyoming decree, as is apparent from its findings to the effect that that decree is valid and binding upon plaintiff. Since the controlling features of the case are presented by the pleadings, and the evidence is largely documentary, this court is in as good a position to pass upon the merits as was the trial court and consequently we are not bound by the trial court's findings.

It is contended that this is a collateral attack upon the Wyoming judgment. Whether it be direct or collateral, the same rules do not obtain as would be applicable in a case in which the attack was upon a domestic judgment. Meyer or his successors are not bound by his failure to seek a review of the judgment of the Wyoming court, which is not a judgment affecting the ownership of the one sixty-fourth interest here involved and which judgment sought to affect and impound property without the jurisdiction of the Wyoming court. By this action, plaintiff is pursuing a remedy available to her at any time an attempt is made to enforce a void judgment. The courts of this state can afford her, its citizen, relief, and will not compel her to resort to a foreign tribunal.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of plaintiff and against W. B. Milliken and Margaret Milliken, and each of them, and the Texas Production Company and the Ohio Oil Company and each of them, for any and all monies shown to have been paid the Millikens by virtue

of the Wyoming decree and that an order be entered enjoining the defendants, the Millikens, from in any way interfering with the collection by plaintiff of the proceeds from the interest herein involved or to be involved in the future.

MR. JUSTICE BOUCK dissents.