THE STATE OF NEVADA ON THE RELATION OF H. J. CRUMMER, RELATOR, *v.* THE FOURTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ELKO AND THE HONORABLE TAYLOR H. WINES, JUDGE THEREOF, RESPONDENTS.

No. 3718

October 23, 1952.                    249 P.2d 226.

See also 68 Nev. 527, 238 P.2d 1125.

*Hawkins, Rhodes and Hawkins,* of Reno, for Relator.

*Woodburn, Forman & Woodburn,* and *Gordon R. Thompson,* of Reno, and *Orville R. Wilson,* of Elko, for Respondents.

278

## OPINION

By the Court, MERRILL, J.:

Petitioner seeks a writ prohibiting further proceedings in an action before respondent court in which action petitioner is the defendant. The question presented is whether that court, by substituted service of process, has acquired personal jurisdiction over petitioner.

Two sections of our statutes are involved. Sec. 8582, N.C.L.1929, Supp. 1931–1941, provides in part as follows: "When the person on whom service is to be made resides out of the state, or has departed from the state, or cannot, after due diligence, be found within the state, or conceals himself to avoid the service of summons, and the fact shall appear, by affidavit, to the satisfaction of the court or judge thereof, * * * such court or judge may grant an order that the service be made by the publication of the summons." Sec. 8583, N.C.L.1929, Supp. 1931–1941, provides in part as follows: "When publication is ordered, personal service of a copy of the summons and complaint, out of the state, shall be equivalent to completed service by publication * * *."

The action involved is one in personam: one for

breach of contract and money damages. Summons was duly issued. Affidavits were then filed for the purpose of establishing that defendant, although a domiciled resident of this state, had departed from the state and could not, therefore, be found within the state. An order based upon this ground was thereupon made by respondent court for service of process by publication of summons pursuant to sec. 8582, N.C.L. Subsequently summons was served upon the defendant personally within the state of California pursuant to sec. 8583, N.C.L. The defendant then moved to quash service of process, which motion was denied. Petition for writ of prohibition was then made to this court and an alternative writ issued.

In considering whether under the statutes of this state and the facts of this case, respondent court has acquired jurisdiction in personam over the petitioner, three general questions are presented:

(1) Whether this state has jurisdiction over the person of petitioner while absent from the state.

(2) If so, whether the state by statute has provided for the exercising of such jurisdiction through its courts.

(3) If so, whether respondent court has proceeded in a proper manner to exercise such jurisdiction.

·[Headnote 1]

*Question Number 1.* It is conceded by petitioner that this question is no longer an issue but has been put to rest by the Supreme Court of the United States in Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 343, 85 L.Ed. 278. Since petitioner is domiciled within this state, this state has jurisdiction over his person even though he may be absent from the state. See also: Restatement of the Law, Conflict of Laws, sec. 79; Restatement of the Law, Judgments, sec. 16. The basis for such jurisdiction (a departure from the old "physical power to compel performance" theory; see: Dodd, Jurisdiction in Personal Actions, 23 Ill.L.Rev. 427) is clearly set forth in Milliken v. Meyer, supra, where it is stated: "As in case of the

authority of the United States over its absent citizens
\* \* \* the authority of a state over one of its citizens
is not terminated by the mere fact of his absence from
the state. The state which accords him privileges and
affords protection to him and his property by virtue of
his domicile may also exact reciprocal duties. 'Enjoy-
ment of the privileges of residence within the state, and
the attendant right to invoke the protection of its laws,
are inseparable' from the various incidences of state
citizenship. \* \* \* The responsibilities of that citizen-
ship arise out of the relationship to the state which domi-
cile creates. \* \* \* One such incident of domicile is
amenability to suit within the state even during sojourns
without the state, where the state has provided and
employed a reasonable method for apprising such an
absent party of the proceedings against him."

The existence and extent of the jurisdiction possessed
by a state in such a case as this, then, are not dependent
upon a statutory declaration and taking to itself of
jurisdiction. Such jurisdiction is inherent and exists by
virtue of the relationship between the state and its domi-
ciliary.

*Question No. 2.* It is one thing to possess jurisdiction.
It is another to exercise it. Courts do not possess juris-
diction apart from and independent of the state. They
are but instrumentalities through which the state itself
exercises its own jurisdiction over a person. (In accord,
see: 1 Beale, The Conflict of Laws, 326, sec. 74.1.) By
constitution and statute the state has affirmatively con-
ferred upon its various courts authority to exercise the
jurisdiction of the state within specified limits. These
limits, however, have to do with types of actions and
proceedings and establish the competency of the courts
as among themselves to deal with such specified matters.
See: Restatement of the Law, Judgments, sec. 7.
Within these bounds of competency and in the absence
of other specified limitations, the state must be regarded

as having conferred upon its courts general authority to exercise the whole of its jurisdiction.

In addition to authority, however, the courts must by statute be provided with the necessary machinery. Thus it is recognized that exercise of jurisdiction through its courts by a state over its domiciliaries (other than by personal service of process) cannot be had in the absence of express statutory provision. See: Restatement of the Law, Judgments, sec. 8; sec. 16, comment "b." It should also be recognized, however, that while in connection with such statutory provision one sometimes sees reference to a state's "conferring" jurisdiction upon its courts, this is not done by a formal declaration of bestowal or an express conferral of authority. The requirement of statute does not go to the possession of jurisdiction (or to the extent of the jurisdiction possessed) but to the manner and means of its exercise. The requirement is founded not in the need for bestowal of authority already generally conferred by constitution, but in the need for due process and for the express enlargement of the common-law method for service of process which was limited to personal service. As stated in Milliken v. Meyer, supra, the requirement is that "the state has *provided and employed a reasonable method* for apprising such an absent party of the proceedings against him." As stated in the Restatement of the Law, Judgments, sec. 8, comment "b," a state in cases such as this, "may confer jurisdiction upon its courts by *providing a method* of service of process other than personal service." (Emphasis added in both instances.)

Such a method has been provided in this state by secs. 8582 and 8583, N.C.L., quoted at the outset of this opinion. It is to the sufficiency of these provisions that petitioner's principal contentions are directed.

Petitioner contends that sec. 8582 has already been

construed by this court not to apply to actions in personam, citing Nahas v. Nahas, 59 Nev. 220, 90 P.2d 223, 92 P.2d 718; Perry v. Edmonds, 59 Nev. 60, 84 P.2d 711; Pacific States Sec. Co. v. District Court, 48 Nev. 53, 226 P. 1106. These cases, however, deal with actions against nonresidents over whom the state itself possessed no jurisdiction. Since the purpose of the section is to provide for the exercising through its courts of such jurisdiction as the state itself possesses, it is obvious that the statute could not apply in such actions. While the language used in the opinions might be regarded as broad enough to cover all actions in personam, the scope of the decisions cannot be held to exceed that of the situations there considered.

Petitioner next contends that this section may not be construed to apply to cases such as this since the provision for publication of summons where the person to be served has departed from the state, does not expressly limit its application to residents; that its application, therefore, may cover nonresidents as well as residents; that it constitutes a single, inseverable provision which, to be valid, must be valid in its entirety as to all it purports to embrace; that if it be held applicable to actions in personam against residents, it must likewise be held applicable to such actions against nonresidents and thus be wholly invalid; that it should, therefore, be confined in its application to actions in rem and quasi in rem which may apply to both residents and nonresidents. In this connection our attention is drawn by comparison to the Wyoming statute under consideration in Milliken v. Meyer, supra. There the statute specified that service by publication might be had "in actions where the defendant, *being a resident of this state,* has departed from the county of his residence * * *." W.C.S. 1920, sec. 5636. (Emphasis added.)

This, however, is to treat the section as an original bestowal of authority by the state upon its courts in which light, as we have indicated, we do not regard it.

(Cf. Cella Commission Co. v. Bohlinger, 8 Cir., 147 F. 419, 421, 8 L.R.A., N.S., 537, cited by petitioner, where the statute in question not only provided a method of service of process upon all foreign corporations, but expressly stated without limitation that "such service shall be sufficient to give jurisdiction of the person * * *.") Nowhere does our statute purport to define its jurisdictional limits nor characterize the jurisdiction which may be exercised under it. It does no more, and purports to do no more, than provide a method by which such jurisdiction as the state possesses may in certain cases be exercised through its courts. As indicated by our earlier quotation from Milliken v. Meyer, it is not statutory language which delineates the extent of the state's jurisdiction over persons, the exercise of which by the courts has been generally authorized. Such jurisdictional limits are fixed by the relationship between the person served and the commanding state; by the existence or lack of existence of any personal duty to respond to the command of process.

Petitioner next contends that the method of substituted service provided by secs. 8582 and 8583, N.C.L., is not calculated to give adequate notice. It is pointed out that under sec. 8583 personal service is not made mandatory but is merely made the "equivalent" of completed service by publication. Upon the authority of McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A. 1917F 458, it is contended that service by publication is insufficient. Therefore, it is argued, under our statutes personal service outside of the state must be equally insufficient.

We need not decide whether under McDonald v. Mabee service by publication would be adequate under the facts of the case before us. In our view Milliken v. Meyer disposes of petitioner's contention. Under the Wyoming statute personal service was no more mandatory than under our statute. In the language of that opinion the

test was whether the state had "provided and employed a reasonable method." We need not quibble over the significance of the word "equivalent" as used by our legislature. We do not regard that choice of language as materially distinguishable from that of the Wyoming statute which provided: "In all cases where service may be made by publication * * * personal service * * * may be made out of the state." W.C.S. 1920, sec. 5641. If petitioner's contention were valid it might well have been said in Milliken v. Meyer that personal service was not available since that was not a case where service might be had by publication. The fact of the matter is that our statutes have provided personal service outside of the state as one method of giving notice and that that was the method employed in this case. It is stated in Milliken v. Meyer, "While outside the state [Meyer] was personally served in accordance with a statutory scheme which Wyoming had provided for such occasions. And in our view the machinery employed met all the requirements of due process."

*Question Number 3.* Petitioner here contends that the trial court's order for publication of summons was improper for the reason that it was not sufficiently supported by affidavit. That order was made on January 31, 1952. The nearest identification of petitioner to that date was made on January 11, 1952, when one affiant stated that on that date he spoke with petitioner at his father's ranch in California. Petitioner contends that this lapse of 20 days is fatal to the order since the nature or anticipated extent of petitioner's absence from the state after January 11 is not shown, nor whether his absence continued thereafter to January 31. The fact of his continuing domicil in Nevada is not in issue.

In a decision involving an earlier action (since dismissed) between the same parties now before respondent court, this court dealt with the same question here presented. State ex rel. Crummer v. District Court, 68 Nev. 527, 238 P.2d 1125, 1126. In that case we pointed out that the affidavit gave little assurance that "the

defendant's absence continued at the time the order was signed" and that "the facts establishing the pertinent circumstances should give reasonable assurance that those circumstances exist at the time the order is sought."

The affidavits now before us do, we feel, give such assurance. They place petitioner at his father's ranch in southern California on the occasion of four contacts made by one affiant: on May 19, 1950, twice in December 1951, and on January 11, 1952. They show that on June 26, 1951, petitioner testified upon deposition in answer to an inquiry as to his occupation, that at that time he was "looking after a ranch" in southern California. They show that that deposition was taken in this state upon stipulation of counsel that petitioner in so appearing would be exempt from service of process within this state. They show that upon one further occasion in July 1951, petitioner attempted to secure a stipulation of exemption from service of process in order that he might return to this state to attend the Reno rodeo. A showing was thus made of a continuing absence on the part of petitioner for over a year and a half, coupled, substantially, with a continuing presence and occupation at a given address in California. The circumstances indicate absence of any immediate intent to return and tend affirmatively to establish a probability to the contrary.

The petition for writ of prohibition is denied with costs. The alternative writ is vacated and the proceedings dismissed.

BADT, C. J., and EATHER, J., concur.

## FLORENCE G. HERZOG, Appellant, *v.* PAUL HERZOG, Respondent.

No. 3679

October 23, 1952.                    249 P.2d 533.

*G. William Coulthard,* Guardian ad litem, of Las Vegas, for Appellant.

*Emilie N. Wanderer,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Paul Herzog obtained a divorce from Florence G. Herzog on the ground of the latter's insanity. The court rejected appellant's cross complaint for desertion. Appellant, through her guardian ad litem, assigns 20 separate errors in support of her appeal. Many of these are repetitious and many obviously without merit.

1. The record contains so much competent testimony of some seven doctors and psychiatrists as to the insanity of the defendant over a period of years that we should not be justified in spending any time in discussing appellant's contention that the evidence is insufficient to justify the decision and findings that appellant has been continuously insane for more than two years immediately preceding the commencement of the action, and that the statutory requirement for corroboration

was not met. This is so even if we exclude the testimony attacked by the appellant as incompetent. For like reasons we do not discuss the sufficiency of the evidence to justify the court's rejection of the defendant's cross complaint on the grounds of desertion.

Many assignments of error are directed to specific findings of fact and conclusions of law made by the court on the ground that such findings and conclusions were without the issues made by the pleadings and were not supported by the evidence. In almost every case of such assignment appellant confines herself to such bare assertion. A careful examination of the record shows no prejudicial error in any of the respects assigned.

2. Appellant's most serious attack is made upon the court's disposition, or its failure to make disposition, of the community property of the parties. It was admitted by the pleadings, as specifically stated by the court, that the parties owned community property consisting of an automobile, $20,000 in cash and United States defense bonds, and certain insurance policies for $48,000 insurance in which the three minor children of the parties were named as beneficiaries. There was also a house and lot at Kenosha, Wisconsin, which produced a $60 net monthly rental and which stood in the names of both parties. The children were of the respective ages of 13, 10 and 7 years at the time of the trial. The defendant wife was at the time, and had been for several years prior thereto and apparently still is, confined in the Elgin State Hospital in the state of Illinois. The plaintiff, who is himself a doctor of medicine, testified that the state of Illinois maintained and supported his wife at the Elgin State Hospital without charge, but that he kept a sum of money on deposit there, available for the purchase of personal items for his wife. At the conclusion of the case the trial court announced its decision from the bench to the effect that the prayer of plaintiff's complaint for a divorce on the ground of his wife's insanity should be granted and that he should have the

custody of the minor children. The court then denied a request of the guardian ad litem for "a finding with reference to the community property," and denied his request for a requirement that the plaintiff give bond to meet the needs of the insane defendant.

Section 9463, N.C.L.1943–1949 Supp., provides in part as follows:

"In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children. The court may also set apart such portion of the husband's property for the wife's support and the support of their children as shall be deemed just and equitable."

It is insisted by appellant that the failure of the court to assign to her any part of the $20,000 in cash and securities in the possession of respondent was in violation of the requirement of the statute, because, by reason of such divorce, upon the plaintiff's death the defendant will not succeed to any part of his estate and will be entirely without provision for support, and because of the possibility that the state of Illinois may modify its policy of providing for the insane defendant without charge or the defendant may for some reason be removed to some other institution which would or might require payment for her support. Against these contentions it is asserted by the respondent husband that the matters complained of were entirely within the discretion of the court and that its discretion as exercised was amply justified by the conclusive showing of the defendant's insanity, the negative prognosis as to recovery, the absence of any indication that the Elgin State Hospital at Illinois would not continue to provide for the defendant indefinitely, the attitude of respondent

in providing for the personal needs of appellant at the institution and the necessity for the expenditure of the community funds for the benefit of the children.

In the early case of Lake v. Bender, 18 Nev. 361, 394, 4 P. 711, 730, 7 P. 74, under the statutes then existing but not materially changed as to the purpose under consideration, it was held that the matter of division of property "is left to the legal discretion of the trial court, and this court ought not to interfere unless the discretion given has been abused." Later cases have approved this view. Walker v. Walker, 41 Nev. 4, 164 P. 653, 169 P. 459; Buaas v. Buaas, 62 Nev. 232, 147 P.2d 495.

It would appear that in the present case the trial court exercised its discretion by, in effect, awarding all of the community personal property to the husband, for the reasons first that the insane defendant, supported by the state of Illinois, did not require the same, and secondly that the husband required the same for the benefit of the children. The court accomplished this by the simple finding that this property was in the possession and control of the husband rather than by awarding it to him as community property, for the benefit of the children. If this court would not reverse the awarding of the community property to the husband for the benefit of the children as an abuse of discretion under the circumstances of the case, there is no greater occasion for reversal simply because the court handled the matter as it did. It should be further noted in support of the exercise of the court's discretion, first that the Wisconsin property owned by both parties was left undisturbed, with the rentals apparently still available to the wife, and secondly that under our statute, hereinafter discussed, the decree does not relieve the husband of his liability for the support of his wife. We think it clear that the court took into consideration all of the factors mentioned in the statute.

3. Appellant assigns error in the court's failure to

make any order for the husband's support of the wife. Section 9460, N.C.L.1929, after authorizing a divorce on the ground of the defendant's insanity existing for two years prior to the commencement of the action and requiring corroborative evidence of such insanity, reads in part: "* * * a decree granted on this ground shall not relieve the successful party from contributing to the support and maintenance of the defendant, and the plaintiff in such action shall give bond therefor in an amount to be fixed by the court; * * *"

The court adopted the plaintiff's proposed finding to the effect that the defendant wife was provided by Elgin State Hospital "with full maintenance and support, including medical and psychiatric care and hospitalization, without any charge or expense whatsoever to herself or to others, saving only incidental expenses for minor items of clothing, candy, sundries and the like, which expenses have been provided by the plaintiff," and that it is not true that defendant requires $200 per month for her support and maintenance. Appellant had objected to this finding and submitted a proposed finding to the effect that she was without means and that $200 per month was required for her support. What has been said above with reference to disposition of the community property applies with like force to this assignment of error. The learned district judge stated from the bench: "From the testimony of the doctor [plaintiff and respondent herein] there is no fixed sum of money due that hospital. She does require some money for delicacies and minor things. He says he keeps money there for that purpose. No specific amount has been offered in evidence. I think he will still comply with the requirements of the institution in Illinois, whatever [they] may be, and of course keep a sum of money on deposit for her. I don't know what kind of wants they are, I suppose a dress or a nightgown, whatever it might be from time to time." This correctly

reflects the testimony as we read it. Such testimony, in our opinion, justifies such exercise of the court's discretion.

4. It is contended that, under the provisions of the statute last quoted, requirement for bond on the part of the plaintiff is mandatory and that the court's refusal to exact a bond was error. The bond required by the statute is to secure the plaintiff's "contributing to the support and maintenance of the defendant." If the court has for sufficient reason refused to include in its decree a provision requiring the plaintiff to contribute to the support and maintenance of the insane defendant, there remains nothing to be secured by the bond. The same reasoning applies to the requirement that a sum of money be kept on deposit at the hospital to take care of "delicacies and minor things  *   *   *   a dress or a nightgown  *   *   *." As there was no evidence to indicate the amount of such deposit and as the court was therefore unable to require a deposit to be maintained in any specific sum, any bond required would necessarily have been nominal. We find the assignment to be without merit.

5. The court adopted plaintiff's proposed conclusion of law that the court retain jurisdiction of the parties and the cause of action "for the sole purpose of making such other and further orders relative to the care, custody, support and maintenance of the minor children of the parties hereto as may from time to time appear to be necessary and proper." Appellant asserts error in the failure of the court to retain jurisdiction of the parties for the purpose of making further orders relative to the support of the appellant. This assignment is predicated on the wording of sec. 9460, N.C.L.1929, supra, to the effect that the decree shall not relieve the plaintiff from contributing to the defendant's support and maintenance. It is also asserted that the court's action was an abuse of its discretion. We do not consider the point

well taken. Other than in the defendant's proposed findings and conclusions the record does not disclose any contention in the trial court that it should retain jurisdiction for the purpose indicated. The proceedings on motion for new trial do not assert this failure as an error in law. The question of the court's retention of jurisdiction has on several occasions had the attention of the legislature. Section 9462, N.C.L.1929, gave the court the right, upon good cause shown, to change the *custody* of the minor children. As later amended, the court was authorized by sec. 9462, N.C.L.1943–1949 Supp., during the pendency of the action or at the final hearing or any time thereafter during the minority of the children, to make further orders for their *custody, care, education, maintenance and support,* and at any time thereafter to modify or vacate such orders. To date, however, the legislature has refrained from providing a statutory retention of jurisdiction to modify orders for the support and maintenance of the wife and has left the retention of such jurisdiction to the discretion of the court granting the decree. The specific provision of sec. 9460 to the effect that a divorce decree on the ground of insanity shall not relieve the successful party from contributing to the support and maintenance of the defendant obviously does not result in the retaining of jurisdiction to modify the decree. See Sweeney v. Sweeney, 42 Nev. 431, 179 P. 638. The quoted clause left unimpaired the legal duty of the plaintiff to support the defendant, and such duty can be enforced in her behalf by whatever procedure and in whatever forum might be available. State v. Brown, 213 Ind. 118, 11 N.E.2d 679, 113 A.L.R. 1243. In the court's failure to reserve jurisdiction for the purpose of possible future orders for the support of the wife, we find no abuse of discretion.

The judgment and the order denying new trial are affirmed. No costs are allowed.

EATHER and MERRILL, JJ., concur.

FLOY EMILY BROWNFIELD, APPELLANT, *v.* F. W. WOOLWORTH CO., A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW YORK, RESPONDENT.

No. 3699

October 24, 1952.                              248 P.2d 1078.

See also 69 Nev. 143, 242 P.2d 810, 69 Nev. 297, 251 P.2d 589.

*Clyde D. Souter,* of Reno, for Appellant.

*Woodburn, Forman & Woodburn,* and *Gordon R. Thompson,* of Reno, for Respondent.

**OPINION**

By the Court, MERRILL, J.:

This is an action brought by appellant as plaintiff for personal injuries resulting from negligence. The appeal is taken from judgment of the trial court on the ground that the damages awarded are inadequate in the light of the findings (the trial having been had before the court without a jury) ; that the judgment, therefore, is not supported by the findings. Judgment was in favor of appellant in the sum of $1,233.20. The record is limited to the judgment roll. It does not appear that any motion for new trial ever was made.

No objection to the findings of fact was made by respondent, nor were any additions thereto or modifications thereof proposed. The findings by reference adopt as true many of the allegations of the complaint. In this manner they deal in detail with the nature of respondent's negligence, with the manner in which that negligence proximately caused the injury to appellant and, in particular detail, with the nature and extent of appellant's injuries. By such reference the trial court has incorporated into its findings not only a wealth of factual detail, but also much of appellant's descriptive

language and reiteration respecting severe pain, severe shock, constant pain, intense pain and agony, fear and anguish. It is this elaborate detail, attributable to the findings, which, appellant contends, renders the findings so complete as to eliminate all need for a transcript of testimony in order that this court determine as matter of law that the judgment is inadequate. This, however, is not the essential problem presented by this appeal.

The findings also contain the following: "That said injuries to the Plaintiff, Floy Emily Brownfield, caused said Plaintiff, Floy Emily Brownfield, extreme physical and mental pain and suffering, as above found, to the damage of said Floy Emily Brownfield in the sum of One Thousand Dollars." This finding squarely supports the judgment. It would appear, therefore, that rather than an inconsistency between the findings, standing as a whole, and the judgment, the inconsistency is between the findings themselves.

Appellant contends, however, that the finding quoted is, properly speaking, no finding at all, but rather the court's conclusion and decision from the facts. No authority is cited for this proposition and we are unable to accept it as valid. This is not a case where the monetary extent of damage can be calculated by reference to some objective standard and thus ascertained as matter of law. The elements of pain and suffering are wholly subjective. It can hardly be denied that, because of their very nature, a determination of their monetary compensation falls peculiarly within the province of the jury or, as in this case, the trial court as finder of fact.

We are, then, confronted with findings which upon their face appear inconsistent. Under these circumstances and in the absence of any record of the evidence we cannot assume that either is correct or that either is erroneous or unfounded. Of necessity we must hold that appellant has failed to sustain her proposition that

the judgment is not supported by the findings but is inconsistent therewith.

December 22, 1952.                   251 P.2d 589.

**Rehearing denied.**

See also 69 Nev. 143, 242 P.2d 810, 69 Nev. 294, 248 P.2d 1078.