MILLIKEN ET AL. *v.* MEYER, ADMINISTRATRIX.

No. 66.   Argued December 13, 1940.—Decided December 23, 1940.

---

[5] Cf. *Bacardi Corporation* v. *Domenech, ante,* pp. 150, 156–157.

*Mr. Jean S. Breitenstein*, with whom *Messrs. Harold H. Healy* and *Edward M. Freeman* were on the brief, for petitioners.

*Mr. Fred S. Caldwell* submitted for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Colorado Supreme Court held null and void a judgment of the Wyoming court against the claim of Milliken that that judgment was entitled to full faith and credit under the federal constitution. 101 Colo. 564; 76 P. 2d 420; 105 Colo. 532; 100 P. 2d 151. The case is here on a petition for certiorari which we granted because of the substantial character of the federal question which is raised.

The controversy is over a 1/64th interest in profits from operation of certain Colorado oil properties. Transcontinental [1] on August 31, 1922, contracted to pay Meyer

---

[1] Transcontinental Oil Co. In June, 1923, Transcontinental had disposed of a one-half interest in the properties in question to Texas Production Co. In April, 1931, Ohio Oil Co. acquired the remaining interest of Transcontinental in the properties.

4/64ths of those profits. Milliken asserted a claim to a two-thirds interest in that 4/64ths share. As a settlement of that dispute Transcontinental on May 3, 1924, contracted to pay Milliken a 2/64ths interest and Milliken assigned[2] to Transcontinental all his claims against Meyer pertaining to the lands in question and to Meyer's 4/64ths interest in the profits.

Later Milliken instituted suit in the Wyoming court alleging a joint adventure with Transcontinental and Meyer and charging a conspiracy on their part to defraud him of his rights. He sought a cancellation of the contracts of May 3, 1924, and an accounting from Transcontinental and Meyer. Meyer, who was asserted to be a resident of Wyoming, was personally served with process in Colorado pursuant to the Wyoming statutes;[3] but he made no appearance in the Wyoming cause.[4] Transcontinental appeared and answered. The court found that there was a joint venture between Milliken and

---

[2] Milliken's son, Carl S. Milliken, had an interest in the Milliken claim which he likewise assigned to Transcontinental.

[3] Wyo. Comp. Stat. 1920, § 5636 provided: "Service by publication may be had in either of the following cases: . . . 6. In actions where the defendant, being a resident of this state, has departed from the county of his residence with the intent to delay or defraud his creditors, or to avoid the service of a summons, or keeps himself concealed with like intent."

Sec. 5641 provided:

"Personal service out of state. In all cases where service may be made by publication under the provisions of this chapter, personal service of a copy of the summons and the petition in said action may be made out of the state, and such summons when issued for service out of the state, shall be returnable at the option of the party having it issued, on the second, third or fourth Monday after its date, and shall require the defendant or defendants named therein to answer the petition in said action on or before the third Saturday after the return day named in said summons."

[4] His deposition, however, was taken on oral interrogatories concerning his legal residence in Wyoming.

Transcontinental; that the contracts of May 3, 1924, were valid; and that the action against Transcontinental should be dismissed with prejudice. It found, however, that there was a joint venture between Milliken and Meyer; that they were entitled to share equally in 6/64ths of the net profits; and that, while Meyer had regularly received 4/64ths, he had refused to account to Milliken for his 1/64th part. The court did not purport to decree the 1/64th interest to Milliken or anyone else but entered an *in personam* judgment against Meyer for the profits which Meyer had withheld from Milliken, together with interest thereon; and enjoined Transcontinental from paying, and Meyer from receiving, more than 3/64ths of the net profits. This was on July 11, 1931. Thereafter the 1/64th share was withheld from Meyer and paid over to Milliken.[5] In 1935 respondent instituted this suit [6] in the Colorado court praying, *inter alia*, for a judgment against Milliken for the sums withheld under the Wyoming judgment and paid to Milliken, for an injunction against Milliken attempting to enforce the Wyoming judgment, and for a decree that the Wyoming judgment was a nullity for want of jurisdiction over Meyer or his property. The bill alleged, *inter alia*, that Meyer at the time of service in the Wyoming court had long ceased to be a resident of Wyoming and was a resident of Colorado; that the service obtained on him did

---

[5] By the Ohio Oil Co. one of the vendees of Transcontinental. These payments were to Margaret M. Milliken to whom Milliken's interests had been assigned.

[6] Texas Production Co. and Ohio Oil Co. were joined as defendants. They filed separate answers and cross-complaints which are not material here. It should be noted, however, that the Ohio Oil Co. in its answer set up the contract between Milliken and Transcontinental whereby Milliken assigned all of his rights against Meyer in the lands and the 4/64ths interest in question to Transcontinental and alleged that Milliken was estopped thereby to make any claims against it for the disputed 1/64th interest.

not give the Wyoming court jurisdiction of his person or property; and that such judgment was violative of the due process clause of the Fourteenth Amendment. Milliken's answer alleged, *inter alia*, that Meyer was a resident of Wyoming at the time of the Wyoming action and that the Wyoming judgment was entitled to full faith and credit in Colorado under the federal constitution. The Colorado court, on issues joined, found that Meyer was domiciled in Wyoming when the Wyoming suit was commenced, that the Wyoming statutes for substituted service were constitutional, that the affidavit for constructive service [7] on Meyer was filed in good faith, substantially conformed to the Wyoming statute and stated the truth, that Wyoming had jurisdiction over the person of Meyer, that the Wyoming decree [8] was not void, and that the bill should be dismissed.

That judgment was reversed by the Supreme Court of Colorado. It did not pass on the question of whether or not the Wyoming court had jurisdiction of the parties and subject matter. It held that the Wyoming decree was void on its face because of an irreconcilable contradiction between the findings and the decree. In its view the finding of the Wyoming court that Milliken's assignment of May 3, 1924, to Transcontinental of his claims against Meyer was valid, deprived the court of any ground upon which it could predicate a judgment against Meyer, since

---

[7] While the affidavit for constructive service stated in accordance with § 5636 of the Wyoming Comp. Stat., *supra*, note 3, that Meyer concealed himself in order to avoid service of summons, the present record does not show whether or not the Wyoming court so found.

[8] The Wyoming judgment does not seem to have been proved by respondents in accordance with the provisions of R. S. § 905, 28 U. S. C. § 687 in their suit in Colorado to set it aside. Nor was that judgment so proved by the answers. But since the Colorado trial court gave the Wyoming judgment full faith and credit despite lack of such proof, respondents cannot here claim that that was error.

the only basis for an action by Milliken against Meyer rested upon the claim before its assignment.

Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry. *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287; *Adam* v. *Saenger,* 303 U. S. 59. But if the judgment on its face appears to be a "record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." *Adam* v. *Saenger, supra,* at p. 62. In such case the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based. *Fauntleroy* v. *Lum,* 210 U. S. 230; *Roche* v. *McDonald,* 275 U. S. 449; *Titus* v. *Wallick,* 306 U. S. 282. Whatever mistakes of law may underlie the judgment (*Cooper* v. *Reynolds,* 10 Wall. 308) it is "conclusive as to all the *media concludendi.*" *Fauntleroy* v. *Lum, supra,* at p. 237.

Accordingly, if the Wyoming court had jurisdiction over Meyer, the holding by the Colorado Supreme Court that the Wyoming judgment was void because of an inconsistency between the findings and the decree was not warranted.

On the findings of the Colorado trial court, not impaired by the Colorado Supreme Court, it is clear that Wyoming had jurisdiction over Meyer in the 1931 suit. Domicile in the state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service. Substituted service in such cases has been quite uniformly upheld where the absent defendant was served at his usual place of abode in the state (*Huntley* v. *Baker,* 33 Hun 578; *Hurlbut* v. *Thomas,* 55 Conn. 181;

10 A. 556; *Harryman* v. *Roberts,* 52 Md. 64) as well as where he was personally served without the state. *In re Hendrickson,* 40 S. D. 211; 167 N. W. 172. That such substituted service may be wholly adequate to meet the requirements of due process was recognized by this Court in *McDonald* v. *Mabee,* 243 U. S. 90, despite earlier intimations to the contrary. See *Pennoyer* v. *Neff,* 95 U. S. 714, 733; Burdick, Service as a Requirement of Due Process in Actions In Personam, 20 Mich. L. Rev. 422. Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice (*McDonald* v. *Mabee, supra*) implicit in due process are satisfied. Here there can be no question on that score. Meyer did not merely receive actual notice of the Wyoming proceedings. While outside the state, he was personally served in accordance with a statutory scheme which Wyoming had provided for such occasions. And in our view the machinery employed met all the requirements of due process. Certainly then Meyer's domicile in Wyoming was a sufficient basis for that extraterritorial service. As in case of the authority of the United States over its absent citizens (*Blackmer* v. *United States,* 284 U. S. 421), the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties. "Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable" from the various incidences of state citizenship. See *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 279; *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308. The responsibilities

of that citizenship arise out of the relationship to the state which domicile creates. That relationship is not dissolved by mere absence from the state. The attendant duties, like the rights and privileges incident to domicile, are not dependent on continuous presence in the state. One such incident of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him. See Restatement, Conflict of Laws, §§ 47, 79; Dodd, Jurisdiction in Personal Actions, 23 Ill. L. Rev. 427. Here such a reasonable method was so provided and so employed.

*Reversed.*