Rudy MILOSAVLJEVIC

v.

Brenda J. BROOKS.

Civ. No. 70 H 175.

United States District Court,
N. D. Indiana,
Hammond Division.

June 23, 1972.

544

David S. Stevens, East Chicago, Ind., for plaintiff.

Jon F. Schmoll, Gary, Ind., for defendant.

## MEMORANDUM

BEAMER, District Judge.

This is a personal injury action arising from a collision which occurred on Indianapolis Boulevard, East Chicago, Indiana on March 24, 1970. The complaint, filed August 3, 1970, alleges that defendant, a citizen of Indiana, negligently drove her vehicle and collided with a vehicle driven by plaintiff, a citizen of California. Defendant has moved to dismiss the action for lack of personal jurisdiction over the defendant as a result of improper service of process.[1]

Plaintiff first attempted to serve defendant at the address listed on the police report, 4421 Indianapolis Boulevard, East Chicago, Indiana. The return of service indicates that on September 10, 1970, the Marshal delivered the summons and complaint to Mr. Jon Schmoll.

1. No motion to dismiss for lack of personal jurisdiction has ever been filed. However, by court order dated March 30, 1972, the memorandum of defendant in support of the defense is to be treated as a motion to dismiss.

The return indicated that: "Mrs. Brooks is traveling and requested that Mr. Schmoll file an appearance for her." Mr. Schmoll is an attorney who represents the State Farm Insurance Company, defendant's insurance carrier. Schmoll filed an appearance, but later filed the previously mentioned challenge to jurisdiction. Following the unsuccessful attempt to serve defendant at her last known address, plaintiff filed an affidavit in support of a request for service of alias summons, alleging that plaintiff had made diligent and numerous attempts to locate defendant to no avail.[2] This request was granted, and an order was entered on October 7, 1971 requiring the clerk to issue alias summons to be served upon defendant by the United States Marshal by publication for three successive weeks in the Hammond Times newspaper, Hammond, Indiana, and by service upon the Secretary of the State of Indiana. The summons was sent by the Secretary of State to the last known address of defendant by registered mail and returned marked "moved, left no address."

The issue thus presented is whether service of process under the facts existing in this case was consistent with the Indiana Rules of Procedure and with the due process clause of the Federal Constitution.

## INDIANA RULES OF PROCEDURE

The Indiana procedural rules governing service of process under the state's "long-arm" jurisdiction are relevant because the federal rules make them available for personal service upon individuals. *See* Fed.R.Civ.P. 4(d) (7) and 4(e).

Indiana TR 4.5, IC 1971, 34–5–1–1, provides:

> When the person to be served is a resident of this state who cannot be served personally or by agent in this state and either cannot be found, has concealed his whereabouts or *has left the state,* summons may be served *in the manner* provided by Rule 4.9 (summons in in rem actions). (Emphasis supplied)

Indiana TR 4.9, IC 1971, 34–5–1–1, provides:

### SUMMONS: IN REM ACTIONS

(A) *In general.* In any action involving a res situated within this state, service may be made as provided in this rule. The court may render a judgment or decree to the extent of its jurisdiction over the res.

(B) *Manner of service.* Service under this rule may be made as follows:

. . . (3) by service by publication pursuant to Rule 4.13.

---

2. Included in the affidavit was the assertion that both Mr. Schmoll and State Farm Insurance Company denied knowledge of defendant's whereabouts. This allegation is substantiated by Mr. Schmoll's answer. However, the affidavit also indicates that Schmoll was told by a relative of defendant that defendant was somewhere in Colorado. Plaintiff, in his memorandum on personal jurisdiction, expressed willingness to take every reasonable means to notify defendant if defendant's counsel had information as to a Colorado address, either by mailing summons to a specific known address or by publication in a newspaper with the largest circulation in the city in which defend-

ant resided. The court's hearing has established that the information given Schmoll was wrong. Wilma Brooks, defendant's mother-in-law, testified that defendant left the state on July 17, 1970 and has since that time been continuously traveling in various states including Kansas and Louisiana. She stated that her daughter-in-law "as far as she knew" did not go to Colorado, though she admitted she had told Schmoll in July that "as far as I knew they were going to Colorado." She had received several telephone calls from her daughter-in-law, but at no time did defendant give her an address.

Indiana TR 4.13, IC 1971, 34–5–1–1, provides in part:

. . . The person seeking such service, or his attorney, shall submit his request therefor upon the praecipe for summons along with supporting affidavits that diligent search has been made that the defendant cannot be found, has concealed his whereabouts, or has left the state, and shall prepare the contents of the summons to be published. . . .

TR 4.13, IC 1971, 34–5–1–1, provides for the contents of summons by publication, including:

(5) A brief statement of the nature of the suit, which need not contain the details and particulars of the claim. A description of any property, relationship, or other res involved in the action, and a statement that the person being sued claims some interest therein;

██ It is defendant's contention that the Indiana Rules require the existence of a res within the state as a prerequisite for the exercise of jurisdiction by means of service by publication. Specifically, defendant refers to "in any action involving a res" in TR 4.9 and to the requirement of a description of the res involved which is set out in TR 4.13. This construction is not convincing on the face of the rules, for TR 4.5 refers to the manner of service set out in TR 4.9(B) rather than to the rule in its entirety. The requirement of setting forth the description which appears in TR 4.13 need not imply that property must be involved but only that if it is involved a description of it must be given. Moreover, TR 4.4(A) (2) provides that causing personal injury or property damage within the state subjects a resident who has left the state to the jurisdiction of the court and TR 4.4(B) makes TR 4.5 applicable for service of process.

However, the defendant argues that case law supports the proposition that jurisdiction in personam over a nonresident by publication extends only to the value of the nonresident's property in Indiana. Defendant relies upon Transcontinental Credit Corporation v. Simpkin, Ind., 277 N.E.2d 374, 380 (1972):

When a complaint is filed against a non-resident owner of property in Indiana, together with an affidavit for attachment, and there can be no personal service of the non-resident defendant, the *in personam* nature of the main action takes the form of an *in rem* action for which publication of notice is sufficient for jurisdiction under Trial Rule 4.13, *supra*. The claim in the main action can be adjudicated and if held valid, can be satisfied against the property, but only to the extent of the value of such property.[3]

Furthermore, the defendant contends it is established that a personal judgment cannot be rendered against a defendant upon constructive notice, even when such notice is authorized by statute. Beckett v. State ex rel. Rothert, 4 Ind.App. 136, 30 N.E. 536 (1892); National Malleable and Steel Castings Co. v. Goodlet, 195 F.2d 8 (7th Cir. 1952). This contention involves the requirements of the due process clause and will be discussed later.

*Transcontinental* was an action against a nonresident as individual guarantor of a loan made by Transcontinental to a third party. The issue was whether the right to bring an ancillary attachment action was conditioned upon a valid right to carry out a personal judgment action on the guarantee. The court merely decided that the right to bring an ancillary attachment action was not conditioned on the right to carry out an in personam judgment in the main action, since under Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), assertion

---

3. The court added this footnote: "Assuming the 'long arm' statutes do not apply."

of quasi-in-rem jurisdiction over nonresidents by publication is upheld to the extent of their property in the state. The court did not hold that the presence of property in the state was necessary to create valid jurisdiction over a nonresident under Indiana law. In the passage quoted above, the court qualified its statement by a footnote: "Assuming the 'long arm' statutes do not apply." Thus, the court found that the judgment was limited to the property in that case because of its assumption that the "long arm" provisions did not apply to give in personam jurisdiction. The court thus expressly left unanswered the effect of the "long arm" statute upon jurisdictional requirements. The statute, as we have seen, has no requirement of a res for in personam jurisdiction under the conditions set out.

Nor is the requirement of a res a constitutional one. The traditional rationale for requiring a res within the state was that the court could obtain a limited or qualified jurisdiction over the person by constructive service to enable it to deprive the person by judgment of the property over which it had obtained jurisdiction. Brown-Ketcham Iron Works v. George B. Swift Co., 53 Ind.App. 630, 100 N.E. 584, 587 (1913). This requirement was thought necessary for due process. *Id.* The basis for this theory was *Pennoyer, supra,* which was grounded upon ideas of territorial sovereignty of the states:

> . . . It is in virtue of the State's jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. *Id.* 95 U.S. at 723.

The root idea of *Pennoyer* is still viable. It is that a state cannot authorize courts to affect a person's interests without a rational basis for the exercise of judicial power consisting of a relation of the parties and the subject matter of the action to the state in some significant way. However, International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) made clear that the *Pennoyer* theory that jurisdiction to render in personam judgments depends upon the presence of the defendant (or for quasi-in-rem, his property) in the state is no longer valid. Under *International Shoe,* "minimal contacts" of the defendant with the state are sufficient to guarantee that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," and such contacts make it reasonable in the context of our federal system to require him to defend against the action.

What contacts are sufficient depend upon their relation to the cause sued upon and the orderly administration of the law, but generally there must be such contacts that the particular form of substituted service used gives reasonable assurance that notice will be actual. Even single acts may be sufficient if they give rise to the liability sued upon. *See International Shoe, supra. International Shoe* relied not upon the jurisdictional principle that the state would exceed its powers by certain assertions of jurisdiction, but on the theory that jurisdiction, like notice, depends upon the opportunity for a fair trial. The due process clause limits in personam jurisdiction only in cases where it would be unfair to the defendant. *See* 47 F.R.D. 73, 83. Thus, in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) Justice Black emphasized that the trend, attributable to "the fundamental transformation of our national economy," is toward expanding the permissible scope of state jurisdiction over nonresidents. And it has been noted that it is not difficult to extrapolate from *McGee* a general principle that the due process clause imposes no bar to a state's assertion of personal jurisdiction, of course on prop-

**548**

er notice, in favor of a person within its borders who suffers damage from a tort the defendant committed there, since "inflicting harm within a state would appear to meet whatever further constitutional requirement may arise from 'territorial limitations on the power of the respective States.'" Buckley v. New York Post Corp., 373 F.2d 175, 181 (1967) (dictum).[4] Any view that it violates basic notions of fair play rests on the premise, which a legislature is free to question, that plaintiffs are more inclined to make unjust claims than defendants are to not paying just ones. *Id.*

■ It has thus been held that assertion of in personam jurisdiction over a nonresident under a long arm statute upon the commission of a single tort is sufficient to meet the jurisdictional requirements of due process, even when the defendant has no other contact with the state. *See e. g.* Star v. Rogalny, 162 F.Supp. 181 (E.D.Ill.1957); *see generally,* 4 J. Moore, Federal Practice ¶ 4.-41–1[3] (2d ed. 1971). Whether the contacts are sufficient depends upon the facts of each case, but in the case of an absent domiciliary, few contacts are necessary. Long ago, in Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940), the Supreme Court discussed the constitutionality of assertions of in personam jurisdiction over resident defendants who are absent from the state:

> Domicile in the state is alone sufficient to bring an absent defendant within the reach of the state's jurisdiction for purposes of a personal judgment by means of appropriate substituted service . . . despite

earlier intimations to the contrary. See Pennoyer v. Neff, 95 U.S. 714, 733 . . . . Its adequacy so far as due process is concerned is dependent on whether or not the form of substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. If it is, the traditional notions of fair play and substantial justice . . . implicit in due process are satisfied.

■ Thus, *Milliken* established that domicile and extraterritorial service will support an in personam judgment, and a domiciliary is amenable to suit even during sojourns without the state if the notice provided is reasonable. *See also* DeFazio v. Wright, 229 F.Supp. 111 (D. N.J.1964). A resident who has left the state without intent to return cannot be served by publication, however. McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917).

Of course state statutes may predicate jurisdiction on the ownership of property within the state, even though it is constitutionally permissible not to do so. *See* 4 J. Moore Federal Practice ¶ 4.-41–1 [3], n. 39 (2d ed. 1971). Under the circumstances here, however, the legislature has clearly challenged the old premise by providing for the exercise of personal jurisdiction without a requirement of a res.

■ Once the requisite "minimal contacts" are established, due process requires a method of notice reasonably calculated to afford the defendant actual notice and thus an opportunity to be heard. Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.

4. In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) the court stressed the need for minimal contacts and emphasized that it is a mistake to assume all restrictions on the in personam jurisdiction of state courts are gone. Thus, in each case there must be some act by which the defendant pur-

posely avails himself of the privilege of conducting activities within the state, thus invoking the benefit and protection of its laws. 357 U.S. at 253, 78 S.Ct. 1228. However, *Hanson* did not involve an action which arose out of an act committed in the forum State.

Ct. 652, 94 L.Ed. 865 (1950). The issue, of course, is whether, on the facts of this particular case, service by publication is valid under the due process clause—not whether the method of service provided by the Indiana Rules is consistent with due process. *See DeFazio, supra.* Defendant argues that constructive service is at best a harsh and technical substitute for personal service and that when personal service is impossible the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done. *McDonald, supra; Mullane, supra.*

Under *Pennoyer,* constructive service of any kind upon a nonresident was ineffectual to provide personal jurisdiction. This was based upon the traditional view that personal jurisdiction depended upon the defendant's presence in the forum, and it was consistent with the idea that judicial process could not be served beyond the boundaries of the state or district. *See* 47 F.R.D. 73, 82. In line with this theory, it was held that service by publication did not warrant a personal judgment against a nonresident. *McDonald, supra.* (Since in *McDonald* the defendant was a former state resident who had no intent to return to the state, he was treated as a nonresident.) However, *Mullane* indicates that the labels "in rem" and "in personam" are no longer of constitutional significance. In discussing the notice requirements of due process, the Court in *Mullane* stated:

> The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice

than other of the feasible and customary substitutes . . . publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. 339 U.S. at 315–316, 70 S.Ct. at 657–658.

The court went on to discuss the situation involved here:

> This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. 339 U.S. at 317, 70 S.Ct. at 658.

Thus, service by publication upon a nonresident under the circumstances of this case might be sufficient to satisfy the due process requirements of *Mullane.* Due process does not require that the defendant receive actual notice in every case. Smith v. Kincaid, 249 F.2d 243 (6th Cir. 1957). The form of notice was surely not "substantially less likely to bring home notice than other of the feasible and customary substitutes," since other methods were not feasible. Nonetheless, publication ordinarily is not a proper means of service in actions in personam. 4 Wright and Miller, Federal Practice and Procedure Civil § 1074 (1969). *Mullane* recognized that "it would be idle to pretend that publication alone . . . is a reliable means of acquainting interested parties of the fact that their rights are before the courts . . . chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper . . ."

But whatever the validity of such service upon a nonresident, service by

publication has been held sufficient as to an absent domiciliary of the state who cannot be served in any other way. Butler v. McKey, 138 F.2d 373 (9th Cir. 1943), cert. denied 321 U.S. 780, 64 S.Ct. 636, 88 L.Ed. 1073. *See also* 4 Wright and Miller, Federal Practice and Procedure Civil § 1115 (1969):

> Although the question of whether service by publication will support an in personam judgment against an absent domiciliary who cannot be personally served has not been settled by the Supreme Court, it seems that if publication is the best possible means of service available and state law permits it under the circumstances, it should be sufficient.

■ Here defendant, by leaving the state and concealing her present location, has made more adequate forms of service unreasonable and impracticable. The publication of notice was in the newspaper with the largest circulation of those in defendant's last known home town and county of residence. In addition, publication here was supplemented by other action "which in itself may reasonably be expected to convey a warning." Plaintiff has attempted to serve defendant at the last known residence both by personal service and by registered mail through the Secretary of State. Defendant's insurance carrier has been served and has appeared. Finally, defendant's mother-in-law, who admitted she receives intermittent phone calls from the defendant, has been called to testify at this court's hearing and is the only person known who will have an opportunity to notify defendant of this court's action directly. These other actions taken by the plaintiff may reasonably be expected to convey a warning to defendant.[5]

5. The court has assumed throughout the last two paragraphs that defendant was a domiciliary. The court believes that the fact that defendant has not yet taken up a permanent residence elsewhere makes this assumption a valid one.