Joseph E. BLOUIN, Jr., and Fred Griese,
Plaintiffs-Appellants,

v.

Hon. Nanette DEMBITZ et al.,
Defendants-Appellees.

No. 104, Docket 73–1686.

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1973.

Decided Dec. 13, 1973.

Edith Blumberg, New York City (Deyan Ranko Brashich, Brashich & Finley, New York City, of counsel), for appellants.

Robert S. Hammer, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for appellees.

Before KAUFMAN, Chief Judge, and SMITH and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order entered in the United States District Court for the Southern District of New York, Charles L. Brieant, Judge, dismissing appellants' § 1983 action against the judges and staff of the New York Family Court, who have admittedly threatened appellants with arrest should they fail to appear at support proceedings instituted by their former wives. Judge Brieant held that the basis of appellants' action—that the state judges had deviated from New York law in that they had notified appellants of the support proceedings solely by mail—involved questions properly left to the state courts. He further found that appellants' action was absolutely barred by

the doctrine of Younger v. Harris, 401 U. S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the exhaustion requirement applied to habeas corpus petitions under 28 U.S.C. § 2254, and the common law of judicial immunity. Since we agree only that the facts here present a prime case for federal abstention, we affirm solely on that ground.

## I.

Those facts are simple and undisputed. Both appellants are divorced men currently being sued for support by their former wives. Following the filing of the support petitions, the Family Court directed its clerk to mail summonses to the two men pursuant to § 427 of the New York Family Court Act. Appellants concede that they received, but chose to ignore, these notices. Upon their failure to appear, arrest warrants were issued—as had been threatened in the first summons—but were left unexecuted until the reluctant defendants were given a second notice and opportunity to appear.[1] At this time, appellants instituted this § 1983 action against the Family Court officials, praying for $20,000 in damages for mental anguish already occasioned by the threats of arrest and injunctive relief against further such harassment.

Appellants concede at the outset that the Family Court could secure *in personam* jurisdiction over them at virtually any time by *personally* serving them at their respective homes or offices.[2] Appellants also apparently have no objection to the fact that incarceration may be the penalty for defying such a summons. Their only objection is that the mailed service of process, which again

---

1. We are advised that a few days after this appeal was argued, appellant Griese was finally arrested. While we are at a loss to explain this turnabout by the state—which had previously stressed its good faith in not executing the long-outstanding warrants—appellant's arrest in no way changes our view that though this action is maintainable, no federal intervention is mandated. On

this latter point, we note that Mr. Griese was promptly released after his counsel appeared specially without waiving his jurisdictional objections.

2. Appellant Griese is a resident of New York; appellant Blouin, while a resident of New Jersey, maintains a business office in New York.

they admit receiving, was not authorized under § 427 of the Family Court Act:

§ 427. Service of summons

(a) Service of a summons and petition shall be made by delivery of a true copy thereof to the person summoned at least three days before the time stated therein for appearance.

. . .

(b) If after reasonable effort, personal service is not made, the court may at any stage in the proceedings make an order providing for substituted service in the manner provided for substituted service in civil process in courts of record.

(c) In a proper case, service of a summons and petition under this section may be effected by mail.

For their part, the officials of the Family Court admit that what was apparently intended to be the exception of mailed service in § 427(c) has swallowed the rule of personal service in § 427(a): They state that the court routinely mails summonses in *every* case due to the fact that it has neither the staff nor the budget to provide personal service.[3] Judge Brieant found that this rather expansive interpretation of § 427(c) had never been challenged in the state courts; he therefore directed appellants to pursue their essentially statutory objections in those tribunals.

## II.

■ Before we consider the primary question of federal abstention, we must briefly comment upon what appear to be alternative rationales for the dismissal below. First, Judge Brieant and both parties assumed that the teaching of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) that the federal courts should be exceedingly reluctant to enjoin state *criminal* proceedings [4] applies to the support actions at issue here. It must be remembered, however, that the Supreme Court has thus far refused to extend *Younger* to cases involving state civil proceedings. *See,* Gibson v. Berryhill, 411 U.S. 564, 573–576, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); California v. LaRue, 409 U.S. 109, 124 n. 2, 93 S.Ct. 390, 34 L. Ed.2d 342 (1972) (Marshall, J., dissenting); Mitchum v. Foster, 407 U.S. 225, 244, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (Burger, C. J., concurring); Younger v. Harris, 401 U.S. 37, 55, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Stewart, J., concurring).

We are, therefore, unwilling to endorse the district court's view—based solely on rather dated dicta (James v. James, 178 Misc. 1041, 37 N.Y.S.2d 89, 90 (Family Ct., Bronx Co., 1941))—that a support action is so "quasi-criminal" as to bring it within the strict ambit of *Younger*.[5] This is not to say that we think the general doctrine of federal-state comity is completely inapplicable here. *See,* Cousins v. Wigoda, 409 U.S. 1201, 1205–1206, 92 S.Ct. 2610, 34 L.Ed. 2d 15 (1972) (Rehnquist, J., Opinion in Chambers). But we do believe that the particularly stringent formulation of that doctrine in *Younger* should be limited, at least until the Court instructs

3. Affidavit of Mr. James P. McGrath, Clerk of the Family Court, New York County.

4. *See also,* Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L. Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S. Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L. Ed.2d 792 (1971).

5. As the district court noted, the state's characterization of the proceedings will at least partially determine *Younger's* applicability. *See,* Gibson v. Berryhill, 411 U.S. 564, 576, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Younger v. Harris, 401 U.S. 37, 55 n. 2, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Stewart, J., concurring). Here it is clear that contemporary New York law views the support proceedings at issue as "civil." N. Y.Dom.Rel.Law § 30; Rivera v. Rivera, 5 Misc.2d 362, 160 N.Y.S.2d 171, 174 (Children's Ct., Westchester Co., 1957); Anonymous v. Anonymous, 38 Misc.2d 961, 239 N. Y.S.2d 315, 317 (Family Ct., Dutchess Co., 1963).

otherwise, to cases involving traditionally criminal proceedings.

■ Secondly, we must disagree with the district court's suggestion that the exhaustion requirement for federal habeas corpus, 28 U.S.C. § 2254, is applicable here where the federal plaintiffs were merely threatened with arrest. We are, of course, aware that the Supreme Court has recently held that § 1983 cannot be used to circumvent the exhaustion requirement where a state prisoner seeks his immediate release. Prieser v. Rodriguez, 411 U.S. 475, 489–490 (1973). However, we do not think that the Court further intended to require such exhaustion where the federal plaintiffs filed their action long before the state brought them under § 2254 by putting them in its custody.[6]

■ Finally, we must disagree with the district court's apparent belief that either the anti-injunction provisions of 28 U.S.C. § 2283 or the common law of judicial immunity bars injunctive relief in this case. The Supreme Court has, of course, held that a § 1983 action is within the "expressly authorized by Act of Congress" exception to § 2283 and that injunctions against state judicial proceedings may, therefore, be granted in an appropriate case. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). And while it is true that the common law of judicial immunity protects a judge from monetary damages under § 1983, Pierson v. Ray, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Seventh Circuit, in a considered opinion, has recently held that neither the legislative history of § 1983 nor the teaching of Pierson v.

Ray precludes *injunctive* relief against judges who have truly abused their offices in denying citizens their basic civil rights. Littleton v. Berbling, 468 F.2d 389, 395–408 (7th Cir. 1972), cert. granted sub nom. O'Shea v. Littleton, 411 U.S. 915, 93 S.Ct. 1544, 36 L.Ed.2d 306 (1973). Since the Supreme Court will review *Littleton* this term, we feel it would be unwise to make the unnecessary decision whether the judges here are absolutely immune from even injunctive relief.

### III.

■ Assuming *arguendo* that appellants can maintain this action, we nevertheless believe the district court acted quite properly in abstaining from a question of judicial administration which is undoubtedly best left to the state courts. First, it must be remembered that the New York courts have not yet ruled on the sufficiency of mailed service in the circumstances of this case. It would, therefore, be improper for the federal courts to apply a constitutional standard to such an uninterpreted statute. Askew v. Hargrave, 401 U.S. 476, 477–478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Reid v. Board of Education of City of New York, 453 F.2d 238, 241–244 (2d Cir. 1971).

■ Moreover, we have no reason to believe that the New York courts will not act to reconcile the statute and practices at issue with the Federal Constitution and state legislative intent. Indeed, one of the cases stressed by appellants, Rodoe v. Noneus, 23 A.D.2d 212, 213,

6. We note that the Court may have already narrowed Prieser v. Rodriquez in its subsequent summary affirmance of Miller v. Gomez, 412 U.S. 914 (1973). In that case, a three-judge court in this circuit had held that indicted, but unconvicted, felons need not exhaust state remedies in a § 1983 action challenging their incarceration in hospitals for the criminally insane. 341 F.Supp. 323, 328–329 (S.D.N.Y.1972). In view of the detailed dissent by Judge Moore on the exhaustion issue (*id.* at 333–336), we cannot

believe that the Court overlooked this jurisdictional question in its summary affirmance. Giving such an affirmance the deference it is due, Doe v. Hodgson, 478 F.2d 537, 539 (2d Cir. 1973), we think the obvious way to reconcile *Prieser* and *Gomez* is to say that while the Court will require exhaustion in cases in which state prisoners seek their immediate release, it will not do so in the case of those incarcerated, or as here merely threatened with imprisonment, without benefit of the normal criminal process.

260 N.Y.S.2d 977, 978 (4th Dept. 1965)—though strictly inapposite because it involved a statute which *required* an initial attempt at personal service [7]—clearly demonstrates that the state courts will protect domestic relations defendants with all the safeguards of the appropriate service statute. Here the defending husbands—who have received ample actual, if not legal, notice —need only appear specially to contest the alleged insufficiency of exclusively mailed service. *See,* N.Y.Civ.Prac.Law & Rules § 3211(a).

In the event the New York courts declare that mailed service is always appropriate in Family Court actions—thus at last forcing the federal courts to assess its constitutionality—the correct standard to be applied would be "whether or not the form of substituted service . . . is reasonably calculated to give . . . actual notice of the proceedings and an opportunity to be heard." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). *See also,* Mullane v. Central Hanover Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Schroeder v. City of New York, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Manchester Modes, Inc. v. Lilli Ann Corp., 306 F. Supp. 622, 626 (S.D.N.Y.1969); Milosavljevic v. Brooks, 55 F.R.D. 543, 548 (N.D.Ind.1972).

We need not, at this point, decide whether properly addressed first-class mail is so "reasonably calculated" to afford such notice.[8] It will be time enough to reach that constitutional question when it is suitably presented for our consideration. We therefore affirm the dismissal below without prejudice to the assertion of appellants' claims in the state courts or the renewal of those claims in the federal courts after an adverse state determination.

Affirmed.

---

7. N.Y. Family Court Act § 525.

8. While we thus do not reach appellants' premature constitutional claim, we should note that United States v. Wiseman, 445 F.2d 792 (2d Cir.), cert. denied, 404 U.S. 967, 92 S. Ct. 346, 30 L.Ed.2d 287 (1971)—a case cited by appellants—is not only inapposite, but also appears to undercut their position. In *Wiseman* this court took a justifiably harsh stance towards two professional process servers who had deprived numerous civil defendants of their rights by failing to deliver personal summonses. Significantly, the process servers were convicted in part on the basis of a survey mailed to the aggrieved individuals. *See,* Tuerkheimer, Service of Process in New York City: A Proposed End to Unregulated Criminality, 72 Colum.L.R. 847, 848-50 (1972).

Similarly, we would merely note that those who have studied the vagaries of personal service in New York have urged that some type of mailed service be substituted. *See, e. g.,* Abuse of Process: Sewer Service, 3 Colum.J.Law & Soc.Prob. 17, 25-27 (1967); Tuerkheimer, *supra* at 859-60.