Jesse **VALDEZ** and Sheryl Valdez,
**Plaintiffs,**

v.

**FORD, BACON AND DAVIS, TEXAS, INC., et al., Defendants.**

**No. 73 H 285.**

United States District Court,
N. D. Indiana,
Hammond Division.

March 7, 1974.

---

**8**

———◆———

Albert C. Hand, Fred A. Malo, Hammond, Ind., for plaintiffs.

Frank J. Galvin, Sr., Gilbert F. Blackmun, Peter C. Bomberger, Hammond, Ind., Lester Murphy, Jr., East Chicago, Ind., for defendants.

## MEMORANDUM OPINION

SHARP, District Judge.

The plaintiffs filed their complaint against the defendants on December 17, 1972 alleging injuries sustained by the plaintiff, Jesse Valdez, on March 22, 1972 while employed by Cities Service in East Chicago, Indiana as a result of an explosion and a fire which occurred on the Cities Service's premises there.

It is alleged that the explosion and fire was caused by the malfunctioning of a sulfur recovery unit designed, assembled, manufactured, installed and supervised by the defendant, Ford, Bacon and Davis, Texas, Inc. It is further alleged that the defendants, Texas Tank, Inc., D'Cap Steel Company, Inc., Slagle, Lamson, Crane-Deming, Buffalo Tank Division and ECO, were "suppliers, prefabricators, vendors and designers of various component parts of the sulfur recovery unit as designed, engineered and installed by Ford, Bacon and Davis, Texas, Inc.

The complaint further alleges that "defendants and each of them knew or should have known that said sulfur recovery unit would be used by employees of Cities Service Oil Company and that said sulfur recovery unit was not safe and suitable for the purposes for which it was intended". The complaint further alleges breach of warranties and representations by all of the defendants in that said sulfur recovery unit was defectively designed, engineered, assembled manufactured, installed and maintained and was not suitable for the purpose for which it was intended. The complaint further alleges that the defendants and each of them placed upon the market a product in a defective condition which was unreasonably dangerous and unsafe for its intended use and that said defendants placed the product upon the market knowing that it would be used by this plaintiff without inspection for defects. Said complaint further alleges that the design, engineering, assembly,

manufacturing, construction, installation, testing and maintenance of the aforementioned sulfur recovery unit and its integral parts were under the exclusive control or management of the defendants and each of them and that the accident hereinabove described was such that in the ordinary course it would not have happened if the defendants and each of them had used reasonable care in such design, engineering, assembly, manufacturing, construction, installation, testing and maintenance of the aforesaid sulfur recovery unit in its integral parts.

Said complaint is based upon an alleged diversity of citizenship.

On February 19, 1974 the defendant, Texas Tank, Inc., filed its motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure asserting the lack of jurisdiction over the person of the defendant, Texas Tank, Inc. The memorandum in support of said motion to dismiss asserts that service of process on the defendant, Texas Tank, Inc., must be made in accord with Rule 4 of the Federal Rules of Civil Procedure. It further asserts that service of process was made upon Texas Tank, Inc. by certified mail to the latter's office in Dallas, Texas. It is asserted that such service of process is not provided for by Federal Rule 4 in and of itself, but can only be allowed by Federal Rule 4 incorporation by reference of the service of process procedures of the State of Indiana. Therefore, Indiana Trial Rule 4.4, IC 1971, 34-5-1-1 must be complied with.

The compliance or non-compliance with Indiana Trial Rule 4 is at the heart of the issue to be decided here. Since the issue was not comprehensively briefed by either side it has been necessary for the court to engage in extended independent research on the subject.

Indiana Trial Rule 4.4 became effective January 1, 1971 and provides as follows:

*"Service Upon Persons In Actions For Acts Done In This State Or Having An Effect In This State*

(A) Acts is serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state; or

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made;

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state."

Amended eff. Jan. 1, 1971.

It is important to consider the backdrop of Indiana Statutes, Indiana case law and decisions in the Federal District Courts and Court of Appeal on this subject which preexisted the adoption of Indiana Trial Rule 4.4. These prior authorities are summarized in Security Credit Acceptance Corporation v. State of Indiana, 144 Ind.App. 558, 247 N.E.2d 825 (1969). Of special consideration is Green v. Robertshaw-Fulton Controls Co., 204 F.Supp. 117 (S.D.Ind.1962), an excellent and comprehensive opinion written by Chief Judge Steckler which was explicitly adopted as the law of Indiana. See also, Electronic Manufacturing Corp. v. Trion, Inc., 205 F.Supp. 842 (S.D.Ind.1962), and Kokomo Opalescent Glass Co. v. Arthur W. Schmid International, Inc., 371 F.2d 208 (7th Cir. 1966), also cited with approval.

Chief Judge Beamer of this court dealt with this subject in Milosavljevick v. Brooks, 55 F.R.D. 543 (N.D.Ind. 1972), and stated:

"And it has been noted that it is not difficult to extrapolate from McGee (v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223) a general principle that the due process clause imposes no bar to a state's assertion of personal jurisdiction, of course on proper notice, in favor of a person within its borders who suffers damage from a tort the defendant committed there, since 'inflicting harm within a state would appear to meet whatever further constitional requirement may arise from territorial limitations on the power of the respective states', quoting Buckley v. New York Post Corporation, 2 Cir., 373 F.2d 175." 55 F.R.D. at 547–548.

The comments of the Civil Code Study Commission which was one of the progenitors of Indiana Trial Rule 4.4 is highly relevant to its proper interpretation:

"Rule 4.4 is modeled after the Illinois Civil Practice Act, § 17 and the Uniform Interstate and International Procedure Act.

The adoption of this rule will expand the personam jurisdiction of the courts of this state to the limits permitted under the Due Process Clause of the Fourteenth Amendment. The requirement that a defendant be accorded 'due process of law' imposes two separate restraints: First, it must appear that the defendant over whom jurisdiction is asserted has had such 'minimum contacts' with the state as to render it consistent with 'traditional notions of fair play and substantial justice.' International Shoe Co. v. Washington, 1945, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Secondly, assuming the requisite 'minimum contacts,' a method of service must be employed which is reasonably designed to give the defendant actual notice of the pending action against him. Milliken v. Meyer, 1940, 311 U. S. 457, at 463, 61 S.Ct. 339, 85 L.Ed. 278, rehearing denied 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143. The Comment to this rule is divided into two sections. The first is concerned with the function of the rule and the second is a general discussion of the proper method of serving process on nonresident."

\*    \*    \*    \*    \*    \*

"(3) Causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods, materials, or services used, consumed, or rendered in this state. This rule gives Indiana jurisdiction over persons causing injury here without being present within the state. While Illinois has not included this rule, the Illinois courts have interpreted subsection (b) to include this situation. It would, however, seem advisable to set out such an important situ-

ation in the rules. A person who intentionally shipped the objects causing harm to this state would undoubtedly be subject to this state's jurisdiction under the *McGee* case. But where a manufacturer has no reason to anticipate that his product would move into another state, the exercise of jurisdiction is a violation of the due process clause. Harvey v. Chemie Gruenthal [Grunenthal] G.m.b.H., C.A.N.Y.1965, 354 F.2d 428, certiorari denied 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015. The last part of this rule is drafted to prohibit jurisdiction in such cases.

(4) Having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state. Some state statutes which have jurisdiction on a single tortious act also include within their purview the single contract as a basis of jurisdiction. See Ill.Rev.Stat., ch. 110, § 17(I)(a) 1959) and Minn.Stat.Ann. § 303.-13(I)3 (Supp.1958). A problem with such provisions is that since a breach of contract, unlike most tortious conduct, is usually manifested by a failure to act, it is more difficult to say that a meaningful act occurred in any particular place. In view of the greater interest on the part of the state in the performance of the contract, jurisdiction on contracts not 'made' in the state should be based on at least some part of the agreement to be performed there. See 73 Harv.L. Rev. 911, 1004. The above rule realizes this objective by setting forth specific language instead of necessitating reading such a broad interpretation into subsection (3)."

It would appear that there is no Indiana case law which provides a definitive interpretation of Indiana Trial Rule 4.4.

However, the analysis and comments of Dean William F. Harvey in 1 Indiana Practice, pages 305–314, are both comprehensive and definitive. In pertinent part Dean Harvey states:

"(i) Changes in Indiana Law

Prior to this Rule, subject to exception, the Indiana statutes adhered to the principle that jurisdiction could not be acquired merely by notice; therefore, a personal judgment could not be predicated on personal service outside the state. Burns' Stat., § 2–808, stated speaking generally, that in all cases where service by publication was proper, personal service of summons could be made out of the state. Such service had the same force and effect as service by publication, and no greater force and effect. Consequently, a party residing beyond the confines of the state was not required to come within the Indiana borders and submit his personal controversy to its courts upon receiving notice of the suit at the place of his residence unless, of course, service by publication was proper.

One of the exceptions to this general proposition was found in the motor vehicle section. Burns' Stat., § 47–1043 provided for personal service on persons who had committed a motor vehicle tort while driving on the public highways of Indiana but who were not available for service within the state. Allowing a personal judgment to be based on personal service outside the state was predicated on the acceptance of a nonresident person of the rights and privileges conferred by existing laws to operate motor vehicles on the Indiana public highways.

It should be noted that Burns' Stat., § 47–1043 has not been repealed. This means of obtaining personal service on persons outside the state upon which a personal judgment may be obtained is still in force. Therefore, in certain situations, it would be wise to utilize this statute, especially since this section has been interpreted and upheld by the Indiana Courts.

(ii) The 'Long Arm' Concept ·

Although a state may not ordinarily acquire jurisdiction over a person merely because he has done acts within the jurisdiction, nevertheless, there are some acts of such a character that the state may properly do so. This section greatly extends the concept and scope of such acts through the 'long arm' theory. The earlier cases upholding 'long arm' statutes extending personal service beyond the territorial boundaries did so, it was argued, upon an implied consent theory. The person driving upon the public highways of a state or a foreign corporation carrying on business within the state was thought to have consented, by implication, to service of process outside that state. In the case of the motor vehicle statute, it may be further argued that the voluntary operation of an automobile within the state subjects the operator to the reasonable regulations of the state as to the consequences of such operation. Perhaps included among the consequences is the exercise of jurisdiction over him, whether he consented to those consequences or not.

The impact of this section is to greatly expand the 'long arm' of the Indiana courts to personally serve nonresidents who have submitted to jurisdiction under Rule 4.4.

It should be remembered that the persons served outside the state must meet the requirements of domicile or submission to jurisdiction under subsection (A) to have the force and effect of personal service of summons within the state."

\*　　\*　　\*　　\*　　\*　　\*

"Among the few areas previously covered by Indiana law on this subject were motor vehicle cases and foreign corporations doing business in Indiana. Consequently this subsection is a great extension of the 'Long Arm' concept. Herein are contained those persons who are deemed to have submitted to the jurisdiction of the local courts because of their conduct within or their contact with the state so long as the cause of action arose therefrom. When such conduct or contacts are present, the defendant is subject to personal liability based on service outside the state. This section encompasses organizations as well as individuals."

\*　　\*　　\*　　\*　　\*　　\*

"Due process of law implies two distinct requirements in this area. First, the defendant must have such 'minimum contacts' with the state asserting jurisdiction so as to meet the standards of 'traditional notions of fair play and substantial justice.' International Shoe Co. v. Washington, supra. Second, the method of service used must be reasonablly calculated so as to give the defendant actual notice of the pending action. Milliken v. Meyer, 1939, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357, rehearing denied 312 U.S. 712, 61 S.Ct. 548, 85 L.Ed. 1143. The first requirement, 'minimum contact' will be handled in the following subsections.

(ii) Doing Any Business in Indiana

This section represents an attempt to extend the jurisdiction of the local courts to the constitutional limit. Of course the problem of interpreting just what constitutes 'doing business' is always present. It should be noted that the Rule as originall proposed by the Civil Code Study Commission used the term 'transacting' any business instead of 'doing' business.

The Legislature amended this provision because at the time it was thought that the word 'doing' would be more familiar to the Indiana courts and attorneys. Although the term 'doing business' has served as a basis in Indiana for obtaining jurisdiction over foreign corporations, see Burns' Stat., § 25–316, the term has been held to be more restrictive than the term 'transacting business'. Porter v. Nahas, 1962, 35 Ill.App.2d 360, 182

N.E.2d 915, and see Jox, 'Long-Arm Statute for Indiana,' infra, under the 'Law Review and Other Commentary' section.

But of course the possibility for judicial construction in this section is very wide. The question is whether the older and more restrictive cases on 'doing business' shall control in this jurisdictional statute, when it is clear that the purpose of the whole statute, that is Rule 4.4, is to extend the jurisdictional power of the Indiana court and Indiana litigant to the constitutional maximum. In short, to bring Indiana and its court-jurisdictional power into line with the obvious trend in other states, and to assert for Indiana its full constitutional power."

\*    \*    \*    \*    \*    \*

"Under this section, the tortious act is no longer restricted to operation of vehicles on the highways. The aim of this section is to assert jurisdiction to the fullest constitutional extent and courts in upholding similar statutes in other states, have applied the minimum contact and the fundamental fairness test of International Shoe. Various states have upheld the jurisdiction of its courts over nonresident defendants entering the state, in person or by an agent, and committing their acts alleged to be tortious."

\*    \*    \*    \*    \*    \*

"(iv) Local Injuries From Transactions Outside the State.

The Legislature's purpose in passing this statute was to expand rather than to limit jurisdiction and this section suggests the most comprehensive basis for personal jurisdiction of all. The 'contact' requirement is two-fold. First, there must be an injury to persons or property within the state arising from an act (or omission) outside the state by the defendant, and second one of the following must be present at the time of the injury: (a) the defendant was engaged in solicitation or service activities within the state, or

(b) derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this State.

This provision is mainly designed to obtain personal jurisdiction over non-resident defendants and obtain personal judgment in 'product liabilities' cases. The International Shoe case, supra, has broadened the concept of gaining personal jurisdiction; however, even under the 'doing-business' statutes, jurisdiction was often denied in product liabilities cases. The strongest case for jurisdiction is one in which the defendant itself shipped the product into the forum state and the plaintiff was an outsider to the transaction. The equities seem to favor permitting the plaintiff to sue in his own state. He has no connections with the seller's state and the seller has voluntarily introduced something into the buyer's state, knowing that a risk of injury was created. When a manufacturer, or other seller, sends an article into the state for his economic gain, it does not seem unjust to expect him to answer there for the consequences. Furthermore, the state of injury certainly has an interest in the application of its laws to permit recovery.

Many decisions have upheld the concept of this section on the basis that the nonresident defendant had received financial benefit from its products sold in the state of the forum. For example see: Huck v. Chicago, St. P. M. & O. R. Co., 1958, 4 Wis.2d 132, 90 N.W.2d 154; W. H. Elliott & Sons Co. v. Nuodex Products Co., C.A.1st, 1957, 243 F.2d 116, certiorari denied 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38; State ex rel. Grinnell Co. v. Mac-Pherson, 1957, 62 N.M. 308, 309 P.2d 981, certiorari denied 355 U.S. 825, 78 S.Ct. 32, 2 L.Ed.2d 39; Florio v. Powder-Power Tool Corp., D.C.Pa.1957, 248 F.2d 367; Zucco v. Dobeckmun Co., D.C.Mass.1957, 152 F.Supp. 369;

O'Brien v. Comstock Foods, Inc., 1963, 123 Vt. 461, 194 A.2d 568."

Recent decisions of Indiana's two highest courts appear very consistent with the liberal intendments of Indiana Trial Rule 4.4 as indicated by the Civil Code Study Commission Comments and Dean Harvey. See Mueller v. Mueller, Ind., 287 N.E.2d 886 (1972), and Neill v. Ridner, Ind.App., 286 N.E.2d 427 (1972).

Counsel for Texas Tank, Inc. makes arguments with reference to the provisions of Indiana Trial Rule 4.4 as it existed before its amendment on January 1, 1971, which has been quoted in full herein. To a great extent those arguments are irrelevant to the rule as above quoted.

■ This court fully agrees with the comment of Dean Harvey that Indiana Trial Rule 4.4 is intended to extend personal jurisdiction of courts sitting in this State, including this one in this case, to the limits permitted under the due process clause of the Fourteenth Amendment.

■ Necessarily, the primary purpose of a motion to dismiss is to attach a legal or constitutional defect which is apparent on the fact of the complaint. This court finds that the allegations contained in the plaintiffs' complaint are sufficient to allege a factual basis for the exercise of jurisdiction and the service of process under Indiana Trial Rule 4.4.

The modern history of so-called State long-armed jurisdiction is the constant and consistent extension thereof. It is perfectly apparent from all of the authorities that Indiana Trial Rule 4.4 was intended to push the exercise of this jurisdiction to its constitutional limits. This court finds that the exercise of such jurisdiction as to Texas Tank, Inc. in this case is within the proper boundaries of the rule and of the Constitution and is within the letter and spirit of both.

Therefore, the motion of the defendant, Texas Tank, Inc., is denied.