LMOORE, J.
Appellant, Charles Christopher Moffett, appeals a judgment dismissing his petition to annul a judgment against him on a rule for contempt and an arrearage on various child support obligations. He contends that the judgment of contempt violated his due process rights by the unwarranted appointment of a curator. For the reasons set forth below, we affirm.
FACTS
Charles Christopher Moffett and Lisa Elizabeth Moffett were divorced by a judgment dated June 4, 1987. One child was born during the marriage, Megan Amanda Moffett. After the parties were divorced, they resumed living together and on June 5, 1988, Ms. Moffett gave birth to a second child, Brittney Moffett. The couple separated again in the summer of 1990. After their separation, Ms. Moffett filed a rule to obtain custody of the two minor children. She also sought child support and other incidental relief. Mr. Moffett filed an answer requesting an award of joint custody of the minor children.
On August 17, 1990, the parties were awarded joint custody of the minor children. Mr. Moffett was ordered to pay $300 per month child support and maintain medical insurance for the children. He was also ordered to pay all the children’s non-covered medical expenses so long as Ms. Moffett was unemployed, and one-half thereof after she obtained employment. At the time of this judgment, both parties were domiciled in Jackson Parish, Louisiana.
12Approximately twelve years after the judgment awarding joint custody and child support, on September 23, 2002, Ms. Mof-fett filed a rule to have Mr. Moffett held in contempt for unilaterally reducing his child support by one-half when the first child, Megan, reached 18 years of age, and also for failing to maintain health insurance on the minor children beginning in 1993, and for failure to pay non-covered medical expenses incurred on behalf of the minor children. Additionally, Ms. Moffett requested that an income assignment order be issued to Mr. Moffett’s employer to cover payment of the arrearage and continuing support obligation. Lastly, Ms. Moffett alleged that Mr. Moffett was a non-resident of the state, and his last known was either Port Arthur or Bridge City, Texas. Accordingly, she requested that an attorney be appointed to represent him.
The trial court appointed Darrell Avery, attorney at law, to represent Mr. Moffett. The matter was heard by the trial court on November 14, 2002, and Mr. Avery appeared on behalf of Mr. Moffett. After all evidence was taken, the trial court rendered judgment fixing Mr. Moffett’s ar-rearage in child support at $1,050.00, past due medical insurance premiums at *930 $7,077.88 and non-covered medical expenses at $947.10. Mr. Moffett was ordered to pay $1,000.00 in attorney’s fees and assessed with all costs. A written judgment to that effect was signed that same day.
On May 5, 2003, Mr. Moffett filed a petition to annul the November 14, 2002, judgment on the basis that the trial court had no personal jurisdiction and that the judgment was obtained through fraud or ill Ispractices. Mr. Moffett also sought to have the garnishment of his wages enjoined and his ongoing child support obligation terminated. In his petition, Mr. Moffett identified himself as a major domiciliary of the state of Texas. The nullity action was bifurcated from the other matters raised in Mr. Moffett’s pleading by order of the court signed on May 25, 2004. The nullity action came for trial on September 27, 2004.
At trial, the court heard from Mr. Avery, the attorney appointed to represent Mr. Moffett in the contempt proceedings. He testified that after being appointed, he ran an ad in the Jackson Independent, the local newspaper, asking for contact information on Mr. Moffett. He also performed an internet search and called directory assistance in both Port Arthur and Bridge City, Texas. Lastly, he sent a letter to P.O. Box 32, Hodge, Louisiana, Mr. Moffett’s parents’ address. The letter was opened, taped back together and returned to him. He testified that his efforts yielded no useful contact information to notify Mr. Moffett of the pending litigation. While he received a couple of leads regarding people to contact, his calls to those individuals were not returned.
The court also heard testimony from Ms. Moffett who asserted that, at the time of filing her rule for contempt, she did not have an address for Mr. Moffett, but knew that he was residing in Texas. She told her attorney that the address she had for him was P.O. Box 32, Hodge, Louisiana, but that she believed he was now living in either Port Arthur or Bridge City, Texas. She testified that she tried to obtain contact information from Mr. Moffett’s mother, but she was uncooperative. She admitted that she obtained a phone |4number for Mr. Moffett off of her daughter’s cell phone, after the judgment on her rule for contempt had been rendered. She claimed she provided this number to her attorney. She also admitted that copies of money orders shown to her at trial which Mr. Moffett had used to pay his support over the years showed an address of P.O. Box 1042, Hodge, Louisiana. However, she claimed that she took no notice of the address at the time. She stated that the last several money orders, however, had a return address of P.O. Box 32, not 1042. She did not become aware of Mr. Moffett’s place of employment until December 2002, after the judgment of arrears had already been rendered.
The court also heard testimony from Jerry and Shirley Shankles, a couple with whom the minor children had resided for long periods of time since the Moffetts’ separation in 1990. Both the Shankles testified that they were not aware of any home or work address for Mr. Moffett after he moved to Texas.
Mr. Moffett’s parents also testified. Charles Ray Moffett, Sr. testified that he first became aware that his son had been sued when the sheriffs office delivered pleadings filed by the State of Louisiana seeking to enforce the support order. The pleadings were submitted into evidence and reflect delivery of the papers on January 28, 2003. He did testify, however, that he had received correspondence in August of 2002 from attorney Bobby Culpepper regarding an unrelated matter. The letter contained a paragraph in which Mr. Cul- *931 pepper informed Mr. Moffett, Sr., that his office was trying to reach Mr. Moffett, Jr., regarding his child support obligation. Mr. |RMoffett, Sr. spoke with Mr. Culpep-per and stated at trial that he provided Culpepper with his son’s post office box address in Hodge, Louisiana.
Mr. Moffett’s mother denied ever refusing to give Ms. Moffett an address for her son. She admitted receiving the various letters in evidence from Mr. Culpepper’s and Mr. Avery’s attempts to inform her son of the pending child support issues. While she also admitted opening some of them, she denied actually reading any of the letters when she discovered that they were not intended for her. Both of Mr. Moffett’s parents testified that they did not read the Jackson-Independent newspaper.
Mr. Moffett testified that he had maintained a Louisiana mailing address at P.O. Box 1042 in Hodge for the previous 12 to 13 years. He also testified that he had a Louisiana driver’s license. However, he admitted that he had been a resident of Bridge City, Texas, for the last two and one half years. He testified that he never received any mail at his post office box or at his Bridge City address advising him of Ms. Moffett’s rule for past due child support. He also indicated that he had not received any telephone calls informing him of the legal proceedings. On cross-examination, he admitted that the envelopes bearing his money orders would have borne a Texas postmark, since he was mailing them from Texas.
Megan Moffett took the stand on rebuttal and testified that her mother had found out her father’s home telephone number in the fall of 2002. She testified that her mother told her she had called the number, and Mr. Moffett’s new wife answered the telephone. Megan asserted that the 16telephone call took place prior to the birth of her baby who was born on November 19, 2002.
After hearing all the evidence the court took the matter under advisement. On December 14, 2004, the trial court rendered written reasons for judgment and judgment denying the petition to nullify the November 14, 2002, judgment on ar-rearages. Specifically, the trial court found that the appointment of a curator to represent Mr. Moffett was adequate for the court to exercise jurisdiction. Mr. Moffett appeals.
DISCUSSION
On appeal, Mr. Moffett argues that the appointment of a curator was inappropriate without a preliminary showing that attempts to serve Mr. Moffett with the rule had been unsuccessful and that he could not be served. He also contends that his due process rights were violated because Ms. Moffett provided insufficient information to the curator'to aid his efforts in locating Mr. Moffett.
Mr. Moffett relies on La. R.S. 13:3204 and this court’s opinion in Rando v. Rando, 31,366 (La.App. 2 Cir. 12/9/98), 722 So.2d 1165. La. R.S. 13:3204 provides in pertinent part:
A. In a suit under R.S. 13:3201, a certified copy of the citation or the notice in a divorce under Civil Code Article 102 and of the petition or a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff in a summary proceeding under Code of Civil Procedure Article 2592 shall be sent by counsel for the' plaintiff, or by the plaintiff if not represented by counsel, to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit *932 is filed, or by one authorized by the law of the place where the service is made to serve the process [7of any of its courts of general, limited, or small claims jurisdiction.
B. If service of process cannot be made on the nonresident by registered or certified mail or by actual delivery, the court shall order that service of process be made on an attorney at law appointed to represent the defendant pursuant to Code of Civil Procedure Article 5091.
In Rando, supra, this court held that personal jurisdiction over a nonresident defendant must be obtained through service under the long-arm statute and the appointment of an attorney thereunder cannot be made unless service of process cannot be made by registered or certified mail or by actual delivery. Accordingly, the court held that the appointment of an attorney for the non-resident defendant husband where the plaintiff wife knew his New Jersey address was inadequate for the assertion of personal jurisdiction.
The holding in Rando, supra, however, is not controlling here. As noted in the court’s opinion, Mr. Rando had never submitted to the jurisdiction of the Louisiana courts by either filing pleadings or appearing in court. Accordingly, while the court had jurisdiction over the status of the parties’ marriage so as to render a divorce, personal jurisdiction over the nonresident would have to be properly obtained to render a money judgment against Mr. Rando. The court held that could not be done unless plaintiff complied with the Louisiana long-arm statute prohibiting the appointment of an attorney under La. C.C.P. art. 5091 unless service could not be made under La. R.S. 13:3204(A).
In the present case, Mr. Moffett had previously submitted to the jurisdiction of the court in the original 1990 proceedings regarding custody Land child support. In such instances, the Louisiana Supreme Court has held that the trial court retains continuing jurisdiction over the absent father because the father had previously submitted to the court’s jurisdiction in earlier child support proceedings. Imperial v. Hardy, 302 So.2d 5 (La.1974). In Parker v. Parker, 382 So.2d 201 (La.App. 2 Cir.1980), this court affirmed the concept of continuing personal jurisdiction over nonresident defendants in child support matters and approved the appointment of an attorney under La. C.C.P. art. 5091 as a valid means of exercising that jurisdiction. The court stated:
We find that the due process requirements of fair play and substantial justice and notice required by decisions of the U.S. Supreme Court are adequately complied with in our concept of continuing jurisdiction and our requirement that the service of the proceedings be upon an attorney at law appointed under the provisions of LSA-C.C.P. art. 5091. The attorney appointed is required to use reasonable diligence to notify the defendant of the suit and the nature of the action. LSA-C.C.P. art. 5094. This method of service is reasonably calculated to give defendant actual notice of the action and opportunity to be heard. This form of service, when combined with a defendant’s earlier knowledge of the custody litigation when personal jurisdiction was initially obtained over him, clearly meets the due process requirements contained in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); and Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).
*933 See also, Barr v. Crawford, 577 So.2d 818 (La.App. 2 Cir.1991); Anderson v. Anderson, 1998-1012 (La.App. 4 Cir. 8/26/98), 718 So.2d 582.
In the present case, as in Parker, supra, the service of the rule on Mr. Avery, as curator ad hoc appointed to represent Mr. Moffett, when combined with Mr. Moffett’s earlier knowledge of the litigation when | npersonal jurisdiction was initially obtained over him, meets the requirements of due process. Compliance with La. R.S. 13:3204(B) regarding service on an appointed attorney is necessary when the right to exercise personal jurisdiction is being asserted under La. R.S. 13:3201, which enumerates the non-exclusive circumstances under which the courts can exercise personal jurisdiction over nonresidents. In the present case, Mr. Moffett had submitted to the court’s personal jurisdiction. In such a case, compliance with La. C.C.P. art. 5091 is sufficient.[1]
Mr. Moffett next argues that the curator ad hoc’s efforts to locate him were insufficient to meet the requirements of procedural due process. La. C.C.P. art. 5094 requires that an attorney appointed to represent an absentee or nonresident must use reasonable diligence to communicate with the defendant and inform him of the pendency and the nature of the action or proceeding against him and of the time available to either answer or assert a defense. La. C.C.P. art. 5098 provides:
The failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith.
For a wilful violation of any provision of Articles 5092 through 5096 an attorney at law subjects himself to punishment for |incontempt of court, and such further disciplinary action as is provided by law.
In the present case, the curator published ads in the local newspaper and performed internet and directory assistance searches in Port Arthur and Bridge City, Texas. These efforts yielded few leads and those which the curator did receive led to no reliable contact information. The curator also mailed a letter to Mr. Mof-fett’s parents who opened the letter but claimed not to have read it when they discovered it was for Mr. Moffett. The letter was returned to the curator in a taped-up envelope. Under these circumstances, we conclude that the curator exercised reasonable diligence as required under La. C.C.P. art. 5094.
We also find no merit to defendant’s claim for nullity based on the contention that Ms. Moffett deliberately withheld Mr. Moffett’s address and telephone number from the curator. Ms. Moffett claimed that she had tried to obtain an address for Mr. Moffett by contacting his mother. She testified that she was aware he had moved to Texas, and as such, paid no attention to the post office box address *934 contained on the money orders. Furthermore, there are no dates on the money orders submitted into evidence which prove that he continued to use the address thereon after his move to Texas. Ms. Moffett testified that she knew Mr. Mof-fett was living in Texas, but had no address. Nothing in the record contradicts her testimony in this regard. She also testified that when she obtained Mr. Mof-fett’s cell telephone number she gave it to her attorney, but there is some confusion as to whether she had the number before or after the hearing on her rule for contempt. Accepting or rejecting conflicting testimony is a matter for determination by the trial judge. Accordingly, we find no error in the determination that Ms. | t ^ Moffett did not deliberately withhold Mr. Moffett’s address or telephone number from the curator.
CONCLUSION
For the above reasons, we affirm the judgment of the trial court denying Mr. Moffett’s petition to annul the judgment of November 14, 2002. Costs of this appeal are to be borne by Mr. Moffett.
AFFIRMED.

. La. C.C.P. art. 5091 provides in pertinent part:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
(a) A nonresident or absentee who has not been served with process, either personally or through an agent for the service of process, and who has not waived objection to jurisdiction.